HUNTER, JR., ROBERT N., Judge.
 

 Defendants appeal from an order compelling discovery. The trial court ordered Defendants to produce documents withheld by the Defendants based on their assertions that the documents were prepared in anticipation of litigation and were therefore subject to confidentiality based on application of the attorney-client privilege, the work product doctrine or the joint defense privilege. After careful examination of the record and the procedures which the Defendants used to assert these privileges, we hold the trial court did not abuse its discretion in compelling the production of the withheld communications.
 

 I. Factual and Procedural Background
 

 Defendants Cruise Connections Charter Management GP, Inc. ("Cruise Corporation") and Cruise Connections Charter Management 1 LP ("Cruise Limited Partnership") planned to bid $50,575,000 on a government contract with the Royal Canadian Mounted Police (the "Mounties") to supply three cruise ships to house security police forces during the 2010 Winter Olympic Games. In order to show financial strength to perform this task, bidders to the government contract had to provide a letter of credit for ten percent (10%) of their total bid amount with their proposal. Proposals were due on 23 May 2008. If they won, Defendants Cruise Corporation and Cruise Limited Partnership expected to make a net profit of at least $14,000,000.
 

 As of 17 May 2008, Defendants had not secured a letter of credit for ten percent (10%) of their overall bid. Defendants asked Plaintiff Sessions to provide a letter of credit for their bid in the amount of $5,057,500 in order to meet this bid requirement. On 22 May 2008, Sessions agreed to provide Defendants a letter of credit in consideration for $5,057,500 from contract proceeds should Defendants be awarded the contract. Defendants signed a letter of intent agreeing to Sessions' terms. The letter of intent reads in part:
 

 In exchange for providing an unredeemable, nonpayable Letter of Credit in the amount of $5,057,500, Mr. Sessions shall be granted assignable rights to receive Warrants at no cost to him for special limited partnership interest in the Partnership which he or his assignee solely at their election may either cause the Partnership to redeem or convert to special limited partnership interests.
 

 If the Partnership is the successful bidder and enters into a contract providing services for the Royal Canadian Mounted Police (the "RCMP Contract"), and if Sessions or his assignee elects to exercise his right to receive a special limited partnership interest in the Partnership or demand that the Partnership redeem the Warrants, Sessions or his assignee shall receive allocations and distributions from the Partnership in an amount equal to the sum of (i) $5,057,500.00 plus (ii) two (2) times the amount of additional capital advanced, loaned, or provided by Mr. Sessions or his nominee together with the principal amount so advanced, loaned, or provided with his assistance. For example, if Sessions or his assignee provides $275,000 for working capital, then the original $275,000 is paid back plus an additional $275,000, prior to any distributions to the other partners of the Partnership or payments of any kind to the other parties to this agreement or to any entity in which they are associated.
 

 If the Partnership is the successful bidder and enters into the contract contemplated herein, the Partnership shall pay Sessions' choice of either the redemption for special limited partnership interest or if the Warrants are exercised allocations and distributions of the amounts described above within 10 days after the Partnership receives its initial payment from the Royal Canadian Mounted Police or Government of Canada or the contracting authority whomever that should be (currently expected to be 75% of the total project fee) (the "Initial Fee Installment").
 

 *849
 
 Sessions, through his company Carolina Shores Leasing LLC,
 
 [1]
 
 obtained a letter of credit from Southern Community Bank & Trust on 22 May 2008. The letter of credit dated 22 May 2008 in the amount of $5,057,500 lists Cruise Connections Charter as the applicant with Carolina Shores Leasing as the co-applicant, and Her Majesty the Queen in Right of Canada as the beneficiary. Sessions transferred $5,057,500 to the bank as security for the letter of credit and paid a fee of $25,000 to obtain the letter of credit.
 

 The same day, Sloane, a partner and chief financial officer of Cruise Connections Charter Management, hand delivered the letter of credit from Winston-Salem, North Carolina to Seattle, Washington. Sloane gave the letter to Kelly, who then delivered the letter of credit to Edwards in Canada. Defendant Cruise Limited Partnership was awarded the contract on or about 30 May 2008. Subsequently, Defendants attempted to renegotiate the agreement with Sessions, but the agreement was not amended.
 

 On 26 November 2008, Cruise Limited Partnership and Cruise Corporation filed suit against the Attorney General of Canada, representing the Mounties in United States District Court for the District of Columbia for breach of contract (hereinafter the "Canadian lawsuit"). On 9 September 2013, the Court granted summary judgment in favor of Cruise Limited Partnership and Cruise Corporation. On 21 July 2014, the Court entered an order for monetary damages against the Canadian government in the amount of $19,001,077. Defendants then entered into a settlement agreement with Canada on 12 December 2014 for the payment of $16,900,000 by 12 January 2015.
 

 In the Canadian lawsuit, Defendants alleged they have no obligation to pay Sessions. Sessions was not a party to the Canadian lawsuit. After filing the Canadian lawsuit, all of the parties in this case entered into a forbearance and escrow agreement. The agreement recognizes a dispute between Sessions and Cruise Connections, but states the parties to the agreement are "willing to forbear from enforcing or taking other action on the Claims until the Canada Lawsuit is resolved...." The parties also agreed to deposit all proceeds arising out of the Canadian lawsuit into the trust account of Strauch Fitzgerald & Green. Thereafter, Strauch Fitzgerald & Green would pay itself litigations costs and attorneys fees, and then deposit thirteen percent (13%) of the net proceeds up to a maximum of $5,000,000 into an escrow account. Since the settlement agreement, Defendants have not paid or agreed to pay Sessions.
 

 On 31 December 2014, Sessions filed a verified complaint and writ of attachment seeking damages for breach of contract and injunctive relief preventing the parties or their agents from disbursing the escrow funds
 
 pende lite.
 
 This complaint named the following as parties: Michael Sloane, Tracy Kelly, Susan Edwards, and Phillip Sloane in their individual capacities as well as Cruise Connections Charter Management 1, LP and Cruise Corporation as Defendants. The complaint also named as parties Strauch Green & Mistretta, a North Carolina law firm, as the settlement and escrow agent. Kelly, Sloane, and Edwards are partners in Cruise Limited Partnership, and Sloane is Cruise Limited Partnership's chief financial officer. In his complaint, Sessions claims the Defendants anticipatorily repudiated the contract and sought damages in excess of $25,000.
 

 Sessions sought a writ of attachment alleging some Defendants are out of state residents and would likely remove the escrow money from North Carolina upon payment by the Canadian government. Sessions sought the writ to prohibit Strauch, Green, & Mistretta, Defendants' counsel, from disbursing the funds in an amount that would leave less than $5,457,500 in its trust account. Attached to the complaint, Sessions provided a copy of P. Sloane's affidavit dated 15 January 2013 from the Canadian lawsuit. The affidavit stated the following:
 

 5. When Cruise Connections approached Mr. Sessions, another individual who was
 
 *850
 
 supposed to provide a letter of credit for the bid had just backed out, and the deadline for submitting the bid was fast approaching. Mr. Sessions knew that Cruise Connections was in a bad bargaining position, since Cruise Connections had no other viable alternatives for getting a letter of credit before its bid was due. Mr. Sessions took advantage of the situation, repeatedly raising the price for providing the letter of credit until he eventually demanded a price equal to the amount of the letter of credit ($5,057,500). Since we were out of time and out of options, Cruise Connections acceded to Mr. Sessions' demand. Given the fact that Mr. Sessions used his vastly superior bargaining position to force these unfair terms upon Cruise Connections, I have serious doubts as to the enforceability of the Letter of Intent.
 

 6. Even if it is ultimately enforceable, the Letter of Intent does not create a debt obligation on the part of Cruise Connections. Instead, if Cruise Connections' bid was successful, Mr. Sessions was to be granted an option to receive a limited partnership interest, pursuant to which he would be able to receive funds in the form of partnership distributions. Cruise Connections did not intend to make distributions to partners until such time as it had confirmed that there was sufficient cash available to cover any current or future costs or other financial obligations related to the Vancouver Olympic project, so any partnership distributions would have only been distributions of profits. If Cruise Connections' bid was not accepted, or Cruise Connections ultimately did not realize a profit, then Mr. Sessions would have recovered nothing.
 

 7. Aside from providing the letter of credit that Cruise Connections submitted to the RCMP in conjunction with its bid, John Sessions provided no other capital or other financing to Cruise Connections, including working capital, so Cruise Connections owed Mr. Sessions no debt whatsoever.
 

 On 27 January 2015, Sessions filed a Rule 41 voluntary dismissal with prejudice as to all claims against Strauch Green & Mistretta. On 13 March 2015, Defendants M. Sloane, Cruise Limited Partnership, and Cruise Corporation filed an unverified answer generally denying Sessions is entitled to any relief. Additionally, Defendants raised fifteen affirmative defenses including failure of consideration, indefiniteness, unconscionability, mutual mistake, duress, and estoppel.
 

 On 19 March 2015, Sessions served identical sets of written discovery requests on each defendant. As an example, Sessions requested all "documents sent to, received from, or concerning John Sessions." Defendants objected, stating:
 

 Defendant objects to this request to the extent it calls for documents containing information protected from disclosure pursuant to the work product doctrine or the attorney opinion work product doctrine. Defendant further objects to this request to the extent it calls for documents containing information protected from disclosure pursuant to the attorney-client privilege or joint defense privilege. Without waiving any of its objections, Defendant will produce non-privileged documents responsive to this request.
 

 Defendants responded with similar objections to Sessions' other discovery requests.
 

 On 30 March 2015, Defendants M. Sloane, Cruise Limited Partnership, and Cruise Corporation filed an amended answer and motion to dismiss alleging three additional defenses: Sessions' claims are barred by the doctrine of accord and satisfaction, novation, and the statute of limitations. On 1 April 2015, Defendants Kelly, Edwards, and P. Sloane filed an unverified answer generally denying they owe Sessions money.
 

 Cathy Holleman, a paralegal at Strauch Green & Mistretta, mailed a privilege log to Sessions' counsel on 16 April 2015. The privilege log listed documents requested in discovery and the associated privilege Defendants invoked in response to the request to produce that document. Below is a representative sample of the privilege log.
 

 Document
 

 Document
 

 Number
 

 Date
 

 Author
 

 Recipient
 

 Description
 

 Privilege
 

 CCPRIV000016
 

 6-09-08
 

 Tracey Kelly
 

 Defendants
 

 Email created in anticipation of litigation and legal advice
 

 Work Product Doctrine; Joint Defense Privilege
 

 CCPRIV000019
 

 6-09-08
 

 Tracey Kelly
 

 Defendants
 

 Email created in anticipation of litigation and legal advice
 

 Work Product Doctrine; Joint Defense Privilege
 

 CCPRIV000020
 

 5-15-08
 

 Phillip Sloane
 

 Defendants and Jack Strauch
 

 Email seeking or containing legal advice
 

 Attorney-Client Privilege
 

 CCPRIV000021
 

 5-18-08
 

 Phillip Sloane
 

 Jack Strauch
 

 Email seeking or containing legal advice
 

 Attorney-Client Privilege
 

 *851
 
 On 15 May 2015, Sessions filed a motion to compel Defendants to provide full and complete responses to Sessions' discovery requests pursuant to Rules 34 and 37 of the North Carolina Rules of Civil Procedure. In his motion, Sessions requested the trial court to order Defendants to produce the following:
 

 (1) To produce all the documents or portions thereof withheld from production solely based on a claim of "work product/joint defense privilege" where the items are communications solely among the defendants themselves without the participation of counsel.
 

 (2) In the alternative to item one, to provide the Court for in camera review [of] the documents, or portions thereof, that Defendants have withheld based on a claim of privilege under the "work product doctrine," even though (a) no attorney was involved in creating the information withheld and (b) the documents were created long before there was any hint of litigation between Plaintiff Sessions and the defendants. The in camera review would allow the Court to determine whether these documents or portions thereof may properly be withheld from plaintiff....
 

 (3) Produce to plaintiff the "To, From, CC, BCC, and Subject" lines of the documents or portions thereof that Defendants have withheld based on attorney client privilege, so that the Plaintiff may make his own independent assessment as to the validity of the claim of privilege....
 

 (4) Pay plaintiff his reasonable expenses incurred in obtaining these orders, including attorney's fees, as provided in Rule 37(a)(4) of the North Carolina Rules of Civil Procedure.
 

 Attached to the motion to compel, Sessions attached eight emails or email chains partially withheld under the work product doctrine as examples of illegitimate use of the work product doctrine. For example, in an email from Edwards to Kelly dated 16 July 2008, the email provided to Sessions read:
 

 Subject: Tried Calling
 

 HI
 

 Back from the Tribunal and have tried calling, no luck.
 

 1. So I would not send the email I just sent-but it needs to be said. We need support on this team and to not question performance.
 

 How was the Bank mtg. Very keen to hear.
 

 [Redacted]
 

 Cheers, Sue
 

 Another email to Edwards from Kelly dated 22 September 2008 read:
 

 Subject: Throwing it out there....
 

 Hi Tracey/Mike:
 

 I suspect that we can prioritize the # 's so that the Partners and all Subcontractor needs can be met.
 

 Priorities:
 

 [Redacted]
 

 493,125 RBC
 

 Partner Lump Sum
 

 [Redacted]
 

 1,200. Cardinal Law
 

 6,450. Insurance
 

 8,000. Port Agent
 
 *852
 
 30,000 Partner draw per month
 

 574,025 as opposed to: 670,575
 

 [Redacted] At that time, all other Sub-Contractors can be deposited with.
 

 Therefore, I see the opportunity to allow the Partners a lump sum draw immediately.
 

 Amount??
 

 Sue
 

 In response to Sessions' motion to compel, Defendants provided an affidavit of Kelly dated 27 May 2015. In his affidavit, Kelly stated he and his partners exchanged "several" drafts of a potential agreement with Sessions. Kelly and his partners "hired Will Joyner and Jack Strauch of Womble Carlyle Sandridge & Rice, PLLC to represent [them] with regard to, among other things, potential litigation related to the third party who had reneged on the financing deal as well as the negotiations with Mr. Sessions." The parties exchanged emails with red-lined changes to the document until, at approximately 1:35 p.m. on 21 May 2008, Sessions emailed Kelly and his partners a version of the document with no added red-lined changes. Sessions indicated the agreement needed to be signed "immediately" in order to obtain a letter of credit the same day. Kelly signed the agreement. Upon review of the document, Kelly found "wholesale changes to the material terms of the proposed agreement from the version that had been circulated earlier." As a result, Kelly believed litigation over the document was possible. Kelly and his partners "began to focus on the Sessions' dispute as well as legal strategy regarding the dispute in or around June 9, 2008."
 

 The trial court held a hearing on the motion 1 June 2015. Because there was no court reporter present at the hearing, a transcript is not included in the record. Instead, the parties provide a summary of the hearing in the record on appeal. On 2 June 2015, the trial court granted in part and denied in part Sessions' motion to compel. The court ordered Defendants produce the following on or before 9 June 2015:
 

 (1) Produce to plaintiff all the documents or portions thereof withheld from production based on a claim of "work product doctrine, joint defense privilege" where the items are communications involving the defendants themselves without the participation of counsel.
 

 (2) Produce to plaintiff the "To, From, CC, BCC, and Subject" lines of the documents or portions thereof that Defendants have withheld based on attorney client privilege, so that the Plaintiff may make his own independent assessment as to the validity of the claim of privilege.
 

 On 11 June 2015, Sessions' counsel emailed Cecilia Gordon, the trial court administrator, asking for a meeting with Judge Burke and asking about a motion for reconsideration filed by Defendants. In response, Gordon wrote: "Pursuant to conversation with Judge Burke, will not hear Mr. Greene's motion for reconsideration and advise that he comply with the court's ruling. Should Mr. Greene not comply he may be subject to the contempt power of the court. Judge Burke is not available to meet with parties."
 

 Defendants timely filed a Notice of Appeal from the order granting in part and denying in part Sessions' motion to compel. Pursuant to Rule 62 of the North Carolina Rules of Civil Procedure, Defendants filed a motion to stay the enforcement of the order granting in part and denying in part the motion to compel. On 29 June 2015, the trial court granted the stay pending disposition of the appeal of that order.
 

 On 15 July 2015, Defendants filed a motion for a protective order with the trial court pursuant to Rule 26 of the North Carolina Rules of Civil Procedure and N.C. Gen.Stat. § 1-294, requesting the court enter a protective order staying the noticed depositions of Defendants. Defendants argued the subject matter of the depositions would be tangled with matters involved in the order on appeal to this Court. The trial court allowed Defendant's motion for a protective order, staying depositions pending disposition of the appeal. The court ordered Defendants to pay any cancellation fees, including air fare, related to the stay of the depositions.
 

 In this Court, on 21 December 2015, Sessions filed a motion to dismiss the appeal for lack of jurisdiction alleging the order appealed is interlocutory and does not affect a
 
 *853
 
 substantial right. Defendants filed a response to the motion to which Sessions filed a reply brief on the motion. Defendants filed a motion to strike Sessions' reply brief. Both the motion to dismiss and the motion to strike were referred to this panel.
 

 II. Jurisdiction
 

 An interlocutory order is an order made "during the pendency of an action" which does not dispose of the entire case, but instead requires further action by the trial court.
 
 Duquesne Energy, Inc. v. Shiloh Indus. Contractors,
 

 149 N.C.App. 227
 
 , 229,
 
 560 S.E.2d 388
 
 , 389 (2002). Generally, interlocutory orders are not immediately appealable.
 

 Id.
 

 The purpose behind preventing interlocutory appeals is to prevent undue delay in the administration of justice by allowing fragmented and premature appeals.
 
 Sharpe v. Worland,
 

 351 N.C. 159
 
 , 161,
 
 522 S.E.2d 577
 
 , 578-579 (1999) (citing
 
 Bailey v. Gooding,
 

 301 N.C. 205
 
 , 209,
 
 270 S.E.2d 431
 
 , 434 (1980) ).
 

 However, an interlocutory order is immediately appealable "(1) if the trial court has certified the case for appeal under Rule 54(b) of the Rules of Civil Procedure ; and (2) when the challenged order affects a substantial right of the appellant that would be lost without immediate review."
 
 Campbell v. Campbell,
 

 237 N.C.App. 1
 
 , 3,
 
 764 S.E.2d 630
 
 , 632 (2014) (citations and quotations omitted). An order compelling discovery is interlocutory in nature and is usually not immediately appealable because such orders generally do not affect a substantial right.
 
 Sharpe,
 

 351 N.C. at 163
 
 ,
 
 522 S.E.2d at
 
 579 (citing
 
 Mack v. Moore,
 

 91 N.C.App. 478
 
 , 480,
 
 372 S.E.2d 314
 
 , 316 (1988) ). When "a party asserts a statutory privilege which directly relates to the matter to be disclosed under an interlocutory discovery order, and the assertion of such privilege is not otherwise frivolous or insubstantial, the challenged order affects a substantial right."
 
 Id.
 
 at 162,
 
 522 S.E.2d at 579
 
 . This Court has applied the reasoning of
 
 Sharpe
 
 to include attorney-client privilege, the work product doctrine, and the common interest or joint defense doctrine.
 
 See
 

 K2 Asia Ventures v. Trota,
 

 215 N.C.App. 443
 
 , 446,
 
 717 S.E.2d 1
 
 , 4 (2011) ;
 
 Cf.
 

 Nationwide Mut. Fire Ins. Co. v. Bourlon,
 

 172 N.C.App. 595
 
 , 601,
 
 617 S.E.2d 40
 
 , 44 (2005) (denying defendant's motion to dismiss as interlocutory and reviewing order compelling discovery involving claims of attorney-client privilege and a tripartite attorney-client relationship).
 

 Here, Defendants asserted attorney-client privilege, the work product doctrine, and the joint defense privilege at the hearing in response to the motion to compel discovery. If the assertion of privilege is not "frivolous or insubstantial" then a substantial right is affected and the order compelling discovery is immediately appealable. A blanket, general objection is considered to be frivolous or insubstantial, but objections "made and established on a document-by-document basis" are sufficient to assert a privilege.
 
 See
 

 K2 Asia Ventures,
 

 215 N.C.App. at 447-448
 
 ,
 
 717 S.E.2d at 4-5
 
 . Defendants provided a document privilege log describing the privilege relating to each withheld document. As a result, their assertion of privilege is not frivolous or insubstantial and a substantial right is affected. We therefore hold this interlocutory order is immediately appealable. We deny Sessions' motion to dismiss the appeal based on its interlocutory nature.
 

 Sessions submitted to this Court a reply brief in support of his motion to dismiss Defendants' appeal, and Defendants thereafter filed a motion to strike Sessions' reply brief. Defendants contend, pursuant to Rule 37(b) of the North Carolina Rules of Appellate Procedure, a motion may "be acted upon at any time, despite the absence of notice to all parties." However, the Rule refers to this Court's ability to act upon a motion at any time, not the ability of a party to do so. Although Rule 28(h) of the North Carolina Rules of Appellate Procedure permits a party to file reply briefs in certain circumstances, Rule 37, which governs motions, does not expressly allow reply briefs. Sessions provides no additional authority to support his ability to file a reply brief to a motion and therefore we decline to consider his reply brief to the motion to dismiss.
 

 III. Standard of Review
 

 "Whether or not the party's motion to compel discovery should be granted
 
 *854
 
 or denied is within the trial court's sound discretion and will not be reversed absent an abuse of discretion."
 
 Patrick v. Wake Cnty. Dep't of Human Servs.,
 

 188 N.C.App. 592
 
 , 595,
 
 655 S.E.2d 920
 
 , 923 (2008). We also review the trial courts' application of the work product doctrine and of attorney-client privilege under an abuse of discretion standard.
 
 Hammond v. Saini,
 

 229 N.C.App. 359
 
 , 370,
 
 748 S.E.2d 585
 
 , 592 (2013) ;
 
 Evans v. United Services. Auto. Ass'n,
 

 142 N.C.App. 18
 
 , 27,
 
 541 S.E.2d 782
 
 , 788 (2001). Under an abuse of discretion standard, this Court may only disturb a trial court's ruling if it was "manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision."
 
 Hammond,
 

 229 N.C.App. at 370
 
 ,
 
 748 S.E.2d at 592
 
 (quoting
 
 K2 Asia Ventures,
 

 215 N.C.App. at 453
 
 ,
 
 717 S.E.2d at
 
 8 ).
 

 IV. Analysis
 

 Generally, parties may obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." N.C. Gen.Stat. § 1A-1, Rule 26(b)(1) (2015). If a party claims a document is privileged, the burden lies with that party to "(i) expressly make the claim and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed, and do so in a manner that, without revealing information itself privileged or protected will enable other parties to assess the claim."
 
 See
 
 N.C. Gen.Stat. § 1A-1, Rule 26(b)(5)(a) (2015).
 

 A. Determination of Validity
 

 When this motion came on for hearing, Judge Burke had Defendants' privilege log and the Kelly affidavit before him. According to Defendants, at the hearing on the motion, Defendants orally requested an
 
 in camera
 
 review but did not tender to Judge Burke the documents to be examined. Lacking the documents, the only evidence before Judge Burke was the privilege log which on its face lacked sufficient evidence for the trial court to assess their claim of privilege. In their brief, Defendants argue the trial court failed to make necessary determinations as required by
 
 Hall v. Cumberland County Hospital System, Inc.
 

 121 N.C.App. 425
 
 ,
 
 466 S.E.2d 317
 
 (1996). They contend a finding of validity of their Rule 26 claim is mandatory and should have been included in the order for the order to be legally enforceable. Appellants read
 
 Hall
 
 to say the motion, affidavit, and privilege log alone are sufficient to support a finding of validity of their Rule 26 claim. Defendants contend an
 
 in camera
 
 review should occur following a determination of validity. We disagree.
 

 The Rules of Civil Procedure are not so clear. The better practice in privilege controversies would be to submit a motion, affidavit, privilege log, request for findings of fact and an
 
 in camera
 
 review together with a sealed record of the documents to be reviewed. Defendants concede they made no formal request for
 
 in camera
 
 review. Using the method followed by Defendants, if the trial court has questions regarding the factual basis of the alleged privileged documents, the court would not have a basis to resolve its questions. Lacking the documents, there is no evidence to determine if the claims of privilege are
 
 bona fide.
 
 Moreover, if the documents are not provided under seal to this Court for our review, appellants run the risk of providing insufficient evidence for this Court to make the necessary inquiry. It is therefore problematic for the Defendants to meet their burden of proof at trial or on appeal.
 

 B. Joint Defense Privilege and Work Product Doctrine
 

 Defendants argue the trial court did not make a finding whether the documents withheld under the work product doctrine or joint defense privilege were prepared in anticipation of litigation. Instead, the trial court summarily ordered the production of all documents where the communications involve the Defendants themselves without participation of counsel. Citing
 
 Evans v. United Servs. Auto Ass'n,
 

 142 N.C.App. 18
 
 ,
 
 541 S.E.2d 782
 
 (2011), Defendants contend the work product doctrine does not require "direct involvement of an attorney" to apply.
 

 The joint defense privilege, also known as the common interest doctrine,
 
 *855
 
 takes the attorney-client privilege and extends it to other parties that "(1) share a common interest; (2) agree to exchange information for the purpose of facilitating legal representation of the parties; and (3) the information must otherwise be confidential."
 
 Friday Investments, LLC v. Bally Total Fitness of the Mid-Atlantic, Inc.,
 
 --- N.C.App. ----, ----,
 
 788 S.E.2d 170
 
 , 177 (2016). Thus, the joint defense privilege is not actually a separate privilege, but is instead an exception to the general rule that the attorney-client privilege is waived when the client discloses privileged information to a third party.
 

 Id.
 

 It is generally recognized when parties communicate to form a joint legal strategy.
 

 Id.
 

 The work product doctrine protects materials prepared in anticipation of litigation from discovery.
 
 In re Ernst & Young,
 

 191 N.C.App. 668
 
 , 678,
 
 663 S.E.2d 921
 
 , 928 (2008). Materials prepared in the regular course of business are, however, not protected.
 
 Cook v. Wake Cnty. Hosp. Sys., Inc.,
 

 125 N.C.App. 618
 
 , 623,
 
 482 S.E.2d 546
 
 , 550 (1997). The test for whether a document was prepared in anticipation of litigation or in the regular course of business is:
 

 whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of the litigation.
 

 Id.
 

 at 624
 
 ,
 
 482 S.E.2d at 551
 
 (emphasis removed).
 

 Pursuant to Rule 52 of the North Carolina Rules of Civil Procedure "[f]indings of fact and conclusions of law are necessary on decisions of any motion or order
 
 ex mero motu
 
 only when requested by a party and as provided by Rule 41(b)." N.C. Gen.Stat. § 1A-1, Rule 52(a)(2) (2015). Rule 41, governing dismissal of claims, does not apply to this case.
 
 See
 
 N.C. Gen.Stat. § 1A-1, Rule 41 (2015). If the trial court is not required to make findings of fact and conclusions of law and does not do so, then we presume the trial court found facts sufficient to support its judgment.
 
 Estrada v. Burnham,
 

 316 N.C. 318
 
 , 324,
 
 341 S.E.2d 538
 
 , 542 (1986) (citations omitted). Although findings of fact and conclusions of law are helpful for meaningful review by our appellate courts, if a party did not request the court to make findings of fact, then it is within the discretion of the trial court whether to make findings.
 
 Evans,
 

 142 N.C.App. at 26-27
 
 ,
 
 541 S.E.2d at
 
 788 ;
 
 Watkins v. Hellings,
 

 321 N.C. 78
 
 , 82,
 
 361 S.E.2d 568
 
 , 571 (1987).
 

 The burden at trial rests on the party claiming privilege under the work product doctrine to show the emails were prepared in anticipation of litigation instead of in the regular course of business.
 
 Evans,
 

 142 N.C.App. at 28-29
 
 ,
 
 541 S.E.2d at 789-790
 
 . And, "[b]ecause work product protection by its nature may hinder an investigation into the true facts, it should be narrowly construed consistent with its purpose."
 
 Id.
 
 at 29,
 
 541 S.E.2d at 789
 
 .
 

 The record on appeal lacks a transcript from the hearing on the motion to compel. The parties included a summary of the hearing, but the summary does not mention a request for factual findings. Additionally, the record contains no response to the motion to compel other than Kelly's affidavit. As a result, there is no evidence in the record that indicates Defendants requested the trial court make findings of fact. Accordingly, the trial court was not required to make findings of fact, and we presume the trial court found facts sufficient to support its judgment. The trial court did not abuse its discretion by failing to make findings of fact regarding whether the documents at issue were prepared in anticipation of litigation.
 

 While we agree with Defendants that the work product doctrine does not require the direct involvement of an attorney to apply, the work product doctrine does require documents be prepared in anticipation of litigation instead of in the regular course of business. The burden rested on Defendants in the trial court to demonstrate the documents in question fell within the shield of the work product or joint defense doctrines. To meet their burden, Defendants
 
 *856
 
 needed to show the documents were prepared in anticipation of litigation. In opposition to the motion to compel, Defendants produced only Kelly's affidavit. The affidavit established Defendants' anticipated litigation as of the dates of the emails at issue. However, Defendants did not meet their burden to show the specific emails at issue were actually prepared or obtained because of the prospect of litigation. Defendants did not demonstrate the emails were exchanged for the purpose of pending litigation instead of during the regular course of business. Although Defendants provided evidence to show litigation was anticipated at the time of the email exchanges, any business-related communication during that time is not protected. Defendants did not meet their burden to show the communications "can fairly be said to have been prepared or obtained because of the prospect of litigation."
 
 See
 

 Cook,
 

 125 N.C.App. at 624
 
 ,
 
 482 S.E.2d at 551
 
 .
 

 Defendants could have met their burden by showing the documents were prepared in anticipation of litigation. Defendants should have given the trial court more information about the nature of the withheld documents and the factual situation surrounding them instead of a broad claim of privilege. The best practice would have been for Defendants to turn over the documents to the trial court for an
 
 in camera
 
 review. On the facts before us, we hold the trial court did not abuse its discretion by ordering Defendants to produce the emails at issue under the work product and joint defense doctrines.
 

 C. Attorney-Client Privilege
 

 Attorney-client privilege is based upon the reasoning that "full and frank" communications between a client and his attorney allow the attorney to best represent his client.
 
 In re Miller,
 

 357 N.C. 316
 
 , 329,
 
 584 S.E.2d 772
 
 , 782 (2003) (quoting
 
 Upjohn Co. v. United States,
 

 449 U.S. 383
 
 , 389,
 
 101 S.Ct. 677
 
 , 682,
 
 66 L.Ed.2d 584
 
 , 591 (1981) ). The privilege is rooted in the English common law, with its earliest recorded instance in 1577.
 
 See generally Berd v. Lovelace,
 
 21 Eng. Rep. 33 (1577). Today, the attorney-client privilege protects "all confidential communications made by the client to his attorney."
 
 Dickson v. Rucho,
 

 366 N.C. 332
 
 ,
 
 737 S.E.2d 362
 
 (2013) (citations omitted). "When the relationship of attorney and client exists, all confidential communications made by the client to his attorney on the faith of such relationship are privileged and may not be disclosed."
 
 In re Miller,
 

 357 N.C. at 328
 
 ,
 
 584 S.E.2d at 782
 
 (citations omitted). The burden lies with the party claiming attorney-client privilege to establish each essential element of the privilege.
 
 Id.
 
 at 336,
 
 584 S.E.2d at 787
 
 . The Supreme Court of North Carolina recognizes a five-part test to determine whether the privilege applies to a certain communication:
 

 (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege.
 

 Id.
 
 at 335,
 
 584 S.E.2d at 786
 
 .
 

 Defendants challenge the trial court's order as it relates to 80 emails between Defendants and their attorneys. The trial court ordered Defendants to produce the "To, From, CC, BCC, and Subject lines" of the emails withheld by Defendants on the basis of attorney-client privilege. Defendants contend revealing the subject lines of the emails will reveal protected information. Quoting a case from Illinois, Defendants state: "Header information may contain information subject to the attorney-client privilege or the work product doctrine."
 
 Shuler v. Invensys Bldg. Sys. Inc.,
 

 2009 U.S. Dist. LEXIS 13067
 
 (N.D.Ill.2009).
 

 After reviewing the relevant case law, we believe the question of whether subject lines of emails must be protected from discovery under attorney-client privilege is a question of first impression in North Carolina. However, just because the form of the document or communication is new or different does not mean we must look outside our jurisdiction for authority. We hold the same five-part test applies for the subject line of an email as it does for any communication
 
 *857
 
 allegedly protected under attorney-client privilege.
 

 Defendants bear the burden of establishing each essential element of the privilege pursuant to the five-part test recognized by our Supreme Court. To support their claim of privilege, Defendants produced a privilege log containing the document dates, authors, recipients, a description, and the privilege asserted. Descriptions of the withheld emails include the following: "email created in anticipation of litigation" and "email seeking or containing legal advice." The record provides no evidence Defendants met their burden at trial to show the subject lines of the emails contained privileged information by meeting the test. The record only reflects Defendants claimed the emails, including their subject lines, are protected by attorney-client privilege. Accordingly, the trial court did not abuse its discretion by requiring Defendants to produce the subject lines of the emails.
 

 D.
 
 In Camera
 
 Review
 

 Finally, Defendants contend the trial court should have conducted an
 
 in camera
 
 review prior to issuing its order compelling discovery. However, the decision whether to conduct an
 
 in camera
 
 review to determine whether documents are shielded from discovery by the assertion of a privilege is within the sound discretion of the trial court.
 
 See
 

 Midgett v. Crystal Dawn Corp.,
 

 58 N.C.App. 734
 
 , 736,
 
 294 S.E.2d 386
 
 , 387 (1982).
 

 Based on the record before us, we see no evidence Defendants made a request for an
 
 in camera
 
 inspection of the documents at trial or submitted the documents for inspection. We note that Plaintiff Sessions did make a request for an
 
 in camera
 
 inspection but this was only requested in the alternative in the event that the court did not rule that the documents were privileged. The decision to conduct an
 
 in camera
 
 inspection, without a request for such inspection, lies within the discretion of the trial court, and we have no record evidence Defendants requested an
 
 in camera
 
 inspection. Unless the court is given the documents to inspect, Defendants will have difficulty meeting their burden to show any specific emails were prepared or obtained because of the prospect of litigation. Defendants took a strategic risk in not submitting the documents to be sealed for
 
 in camera
 
 review.
 

 V. Conclusion
 

 For the foregoing reasons, we hold the trial court did not abuse its discretion by ordering Defendants to produce documents or portions thereof. We therefore affirm the trial court's order.
 

 AFFIRMED.
 

 Judges ELMORE and DAVIS concur.
 

 [1]
 

 Although Carolina Shores Leasing was named as the co-applicant on the letter of credit, they are not a party to this action.