Duke Energy Carolinas, LLC v. AG Ins. SA/NV, 2019 NCBC 73.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 5594

DUKE ENERGY CAROLINAS, LLC
and DUKE ENERGY PROGRESS,
LLC,

        Plaintiffs,

v.

AG INSURANCE SA/NV (f/k/a
L'Etoile S.A. Belge d'Assurances); et
al.,

        Defendants.

**ORDER AND OPINION ON
JOINING DEFENDANTS'
MOTION TO COMPEL DEPOSITIONS
OF LYNN GOOD AND DHIAA JAMIL**

1.    **THIS MATTER** is before the Court on the Joining Defendants'[1] Motion to Compel Depositions of Lynn Good and Dhiaa Jamil (the "Motion to Compel" or the "Motion") filed on October 18, 2019 in the above-captioned case. (ECF No. 513.) Having considered the Motion, the materials submitted in support of and in opposition to the Motion, the arguments of counsel at the November 12, 2019 hearing on the Motion (the "Hearing"), and other appropriate matters of record, the Court hereby **GRANTS** the Motion **in part** and **DENIES** the Motion **in part**.

*Pillsbury Winthrop Shaw Pittman LLP, by Mark J. Plumer, Matthew G. Jeweler, Barry Fleishman, Aaron D. Coombs, William C. Miller, and Jeffrey W. Mikoni, and Hunton & Williams LLP, by A. Todd Brown and Ryan G. Rich, for Plaintiffs Duke Energy Carolinas, LLC and Duke Energy Progress, LLC.*

---

[1] Allianz Global Risks (f/k/a Allianz Insurance Company); Allianz Underwriters Insurance Company (f/k/a Allianz Underwriters, Inc.); Arrowood Indemnity Company; Assurances Generales de France; Century Indemnity Company, as successor to California Union Insurance Company; Federal Insurance Company; Fireman's Fund Insurance Company; First State Insurance Company; General Reinsurance Corporation, as successor to North Star Reinsurance Corporation; Generali IARD, as successor to Le Continent; Old Republic Insurance Company; Pacific Employers Insurance Company; The Continental Insurance Company for London Guarantee and Accident Company of New York; Twin City Fire Insurance Company; and United States Fire Insurance Company.

*Cohn Baughman & Martin, by Frank Slepicka, White and Williams, LLP, by Shane Heskin and Sara Tilitz, and Fitzgerald Litigation, by Andrew L. Fitzgerald, Lee Denton, and D. Stuart Punger, for Defendants Century Indemnity Company, Federal Insurance Company, and Pacific Employers Insurance Company.*

*Karbal Cohen Economou Silk Dunne LLC, by Dena Economou and Gerald Ziebell, and Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by D.J. O'Brien, III, for Defendants First State Insurance Company and Twin City Fire Insurance Company.*

*Squire Patton Boggs (US) LLP, by Eridania Perez-Jaquez and Paul Kalish, and McAngus, Goudelock & Courie, PLLC, by John T. Jeffries, John Barringer, and Jeffrey Kuykendal, for Defendants Allianz Global Risks US Insurance Company, Allianz Underwriters Insurance Company, and Fireman's Fund Insurance Company.*

*Freeborn & Peters LLP, by Bruce M. Engel, Patrick Frye, and Ryan G. Rudich, and Bradley Arant Boult Cummings LLP, by Corby Cochran Anderson and Matthew S. DeAntonio, for Defendant Arrowood Indemnity Company.*

*Hogan Lovells US LLP, by Alexander B. Bowerman and David Newmann, and McAngus, Goudelock & Courie, PLLC, by John T. Jeffries, John Barringer, and Jeffrey Kuykendal, for Defendant Assurances Generales de France.*

*Hinkhouse Williams Walsh LLP, by William C. Joern and Richard McDermott, and Pope Aylward Sweeney & Stephenson, LLP, by Robert Joseph Aylward, for Defendant Continental Insurance Company.*

*Saiber LLC, by Michael Balch and David I. Satine, and McAngus, Goudelock & Courie, PLLC, by John T. Jeffries, John Barringer, and Jeffrey Kuykendal, for Defendant General Reinsurance Corporation.*

*Gerber Ciano Kelly Brady, LLP, by Joanna M. Roberto, and Gallivan, White & Boyd, P.A., by James M. Dedman, IV, for Defendant Generali Iard S.A.*

*Clausen Miller P.C., by Ilene Korey, Michael L. Duffy, Amy R. Paulus, and Teo Belli, and Fox Rothschild LLP, by Jeffrey P. MacHarg, for Defendant Old Republic Insurance Company.*

*James, McElroy & Diehl, P.A., by Adam L. Ross, and Kennedys CMK LLP, by Xavier Vergara and John D. LaBarbera, for Defendant United States Fire Insurance Company.*

*Rivkin Radler LLP, by Alan S. Rutkin, George D. Kappus, Gregory Mann, Steven Zuckermann, and Robert Tugander, and Goldberg Segalla, by David G. Harris, II and David L. Brown, for Defendants Associated Electric and Gas Insurance Services Ltd., Berkshire Hathaway Direct Insurance Company, and TIG Insurance Company.*

*Windels Marx Lane & Mittendorf LLP, by Eric J. Konecke and Stefano V. Calogero, and Hamilton Stephens Steele & Martin, PLLC, by Aaron Lay and Keith Merritt, for Defendant Allstate Insurance Company.*

*Jackson & Campbell PC, by Erin N. McGonagle and Cristopher M. Quinlan, and Butler Weihmuller Katz Craig, by T. Nicholas Goanos and L. Andrew Watson, for Defendants AIG Property Casualty Company, American Home Assurance Company, and Lexington Insurance Company.*

Bledsoe, Chief Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

2.     This action focuses on whether Defendants—all insurers who issued excess level insurance policies to Duke or its predecessors—are obligated to compensate Duke for alleged liabilities linked to coal combustion residuals, i.e., coal ash, at certain Duke-owned power plants in North and South Carolina.

3.     On September 27, 2019, the Joining Defendants submitted a dispute summary under Business Court Rule ("BCR") 10.9 seeking to compel the depositions of Lynn Good ("Ms. Good"), the current President and Chief Executive Officer ("CEO") and former Chief Financial Officer ("CFO") of Plaintiffs Duke Energy Carolinas, LLC and Duke Energy Progress, LLC (together, "Duke"), and Dhiaa Jamil ("Mr. Jamil"),

Duke's current Chief Operating Officer ("COO") (the "Executive Depositions Dispute" or the "Dispute").

4. On October 4, 2019, the Court held a BCR 10.9 telephone conference (the "Conference") on the Executive Depositions Dispute and thereafter issued a Scheduling Order setting a timeline for the Joining Defendants to file a motion to compel concerning the Dispute and for the parties to file briefs and evidence in support of and in opposition to the permitted motion. (ECF No. 507.)

5. On October 18, 2019, the Joining Defendants filed the Motion to Compel with over 2,000 pages of supporting exhibits and testimony.[2] The Joining Defendants contend that the Court should permit the depositions of Ms. Good and Mr. Jamil because Duke's strategy and actions regarding coal plant closure and coal ash remediation are critical, relevant issues in this litigation and Ms. Good and Mr. Jamil were both "decision-makers with ultimate responsibility for shaping Duke's overall coal ash strategy," including how Duke intended to pay for the costs required to close Duke's coal ash ponds. (Redacted Joining Defs.' Mem. of Law Supp. Mot. to Compel Deps. of Lynn Good & Dhiaa Jamil 1–2 [hereinafter "Redacted Joining Defs.' Mem. Supp. Mot. to Compel"].)

6. The Joining Defendants argue, in particular, that Ms. Good and Mr. Jamil each possess unique, personal, and relevant knowledge concerning (i) Duke's plans to close its coal ash ponds in the years before a 2014 coal ash spill at Duke's Dan River

---

[2] The Joining Defendants filed under seal their exhibits and brief in support of their Motion to Compel. (ECF Nos. 513, 514.) The references to those exhibits and brief in this Order are to the redacted, public versions. (ECF Nos. 520.2–520.10, 520.1.)

plant (the "Dan River Spill") and the subsequent enactment of North Carolina's Coal Ash Management Act ("CAMA"), (ii) Duke's strategies and voluntary commitments in response to the Dan River Spill prior to the enactment of CAMA, (iii) Duke's pre-CAMA plans and cost estimates for the closure of Duke's coal ash ponds, (iv) Duke's alleged failure to act on coal ash remediation and plant closure plans presented by Mr. Jamil to Ms. Good and Duke's Board of Directors in 2010, and (v) whether Duke "expected or intended the alleged property damage" at its coal ash sites through its ash pond design.  (Redacted Joining Defs.' Mem. Supp. Mot. to Compel 3.)

7.     The Joining Defendants assert that these issues are directly relevant to their defenses to Duke's claims for coverage, including that Duke (i) improperly seeks an insurance recovery for ordinary business costs, (ii) made voluntary commitments before CAMA was enacted such that CAMA cannot have triggered Duke's coal ash liabilities as Duke alleges, (iii) has brought this action after the relevant statute of limitations has expired, (iv) has failed to mitigate its damages, and (v) has failed to assert a fortuitous claim.  (Redacted Joining Defs.' Mem. Supp. Mot. to Compel 3.)

8.     The Joining Defendants contend that Ms. Good has unique, personal, and relevant knowledge based on her direct involvement in (i) Duke's strategic decisions and actions following the Dan River Spill, (ii) Duke's ash pond closure plans and related costs, (iii) Duke's voluntary commitments to North Carolina's then-Governor Pat McCrory in a March 2014 public letter, (iv) Duke's alleged involvement in the development and passage of CAMA, (v) Duke's creation of a new team to implement Duke's coal ash strategy, and (vi) Duke's SEC reporting, which she approved after

formerly serving as Duke's CFO. (Redacted Joining Defs.' Mem. Supp. Mot. to Compel 4–8.) The Joining Defendants also seek to depose Ms. Good about statements she made in interviews, including that "[a]sh pond closure has been a plan for a very long time" and that Duke "[has] been storing ash for nine decades[,]" as well as statements she made in an e-mail to a Duke shareholder that any seepage at Duke's Riverbend plant was "extremely small" and that Duke was "committed to closing ash basins at Riverbend and our other retired plants in a safe way that alleviates seepage and further protects water quality." (Redacted Joining Defs.' Mem. Supp. Mot. to Compel 5, 8–9.)

9. The Joining Defendants argue that Mr. Jamil has unique, personal, and relevant knowledge due to his "deep involvement" with Duke's coal ash pond closure plans beginning in 2009, before both the Dan River Spill and the passage of CAMA, and his several presentations to Duke's Board of Directors on closure plans and projected costs. (Redacted Joining Defs.' Mem. Supp. Mot. to Compel 9.) The Joining Defendants also argue that Mr. Jamil's opportunity to present to the Board of Directors gave him insight into "what was reported to the decision-makers, questions asked, choices made, and the reasons why" both before and after the Dan River Spill through 2016. (Redacted Joining Defs.' Mem. Supp. Mot. to Compel 9–11.)

10. Duke filed its opposition brief on November 4, 2019. (ECF No. 525.) Duke contends that Ms. Good and Mr. Jamil—Duke's two most senior executives—do not possess unique, relevant knowledge, that the burdens attendant to their depositions as the CEO and COO of a Fortune 150 company far outweigh any alleged benefit to

the Joining Defendants, and that other Duke current and former employees who have been and will be deposed have provided or will "provide ample opportunity for discovery" regarding the coal ash matters on which the Joining Defendants seek information through the requested depositions. (Duke's Br. Opp'n to Joining Defs.' Mot. to Compel Deps. of Lynn Good & Dhiaa Jamil 1–4, 12 [hereinafter "Duke's Br. Opp'n to Joining Defs.' Mot. to Compel"].)

11. Duke advances numerous specific challenges to the Joining Defendants' grounds for deposing both Ms. Good and Mr. Jamil. As to Ms. Good, Duke argues that any testimony concerning the Dan River Spill and its aftermath is irrelevant because Duke is not seeking coverage for any such costs in this litigation.[3] (Duke's Br. Opp'n to Joining Defs.' Mot. to Compel 6.) Further, Duke contends that Ms. Good does not have unique knowledge concerning Duke's coal ash storage plans following the Dan River Spill because she delegated that review to others or concerning the 2014 public letter to Governor McCrory because that letter was prepared by Duke's counsel. (Duke's Br. Opp'n to Joining Defs.' Mot. to Compel 6–7.) Duke also contends that while Ms. Good signed a letter sent to Duke's Board of Directors regarding the creation of Duke's Ash Basin Strategic Action Team ("ABSAT") after the Dan River

---

[3] The Joining Defendants appear to agree, representing at the Hearing that "the issue here is not about Dan River and the clean-up of Dan River and all of that. It's what Duke, at the very top of the company, did with respect to all of its ash basins in the – in the aftermath of Dan River." (Nov. 12, 2019 Hearing Tr. 17; *see also* Nov. 12, 2019 Hearing Tr. 18 ("And the crisis has two aspects to it. One is the Dan River spill itself. Stopped the spill – I mean, stopped the leaking material into the river, addressed that issue, addressed the – the damage to the Dan River, addressed all of those parts of it. And they were all over that. Ms. Good was all over that. But that's not what we are asking her for – asking for her deposition for, or Mr. Jamil.").)

Spill, others who have been or will be deposed are better qualified to address issues related to ABSAT. Duke also contends that Ms. Good did not attend a meeting concerning potential legislation that the Joining Defendants have indicated they wish to examine her about. (Duke's Br. Opp'n to Joining Defs.' Mot. to Compel 7–8.) As to her public and e-mail statements, Duke argues that Ms. Good does not have unique knowledge merely by making "passing references to public information" regarding coal ash storage and that the subject of the e-mail communication at issue—water seepage in earthen dams—is not at issue in this case. (Duke's Br. Opp'n to Joining Defs.' Mot. to Compel 9–10.)

12. As to her potential testimony concerning Duke's SEC reporting of coal ash matters, including, in particular, the classification of Duke's coal ash remediation costs as "asset retirement obligations" ("AROs"), Duke argues that the process through which its attorneys draft 10-K reports, which are, as here, later verified by executives like Ms. Good, does not establish the executive's (or here Ms. Good's) unique knowledge of Duke's accounting classifications. (Duke's Br. Opp'n to Joining Defs.' Mot. to Compel 9.) Moreover, Duke represents that the former Duke employee with the most specific knowledge concerning Duke's ARO classification was scheduled for deposition on November 18, 2019 and that Duke has agreed to provide a Rule 30(b)(6) witness on this topic. (Duke's Br. Opp'n to Joining Defs.' Mot. to Compel 9.)

13. As to Mr. Jamil, Duke disputes that he has unique knowledge concerning Duke's coal ash matters and asserts that the evidence presented by the Joining

Defendants shows only that Mr. Jamil had "high-level ownership" of the coal ash issue prior to the Dan River Spill. (Duke's Br. Opp'n to Joining Defs.' Mot. to Compel 10–11.) Duke argues that pre-Dan River Spill coal ash matters would be better and more completely addressed by Duke witnesses who have already been deposed or will be deposed. (Duke's Br. Opp'n to Joining Defs.' Mot. to Compel 11–12.)

14. On November 12, 2019, the Court held a hearing on the Motion to Compel. Because the Joining Defendants focused their arguments at the Hearing on a subset of the 2,000+ documents they submitted in connection with the Motion, a subset not disclosed to Duke until the night before the Hearing, the Court permitted Duke an opportunity to file a supplemental brief addressing those documents. (ECF No. 540.) Duke filed its supplemental brief on November 27, 2019. (ECF No. 600.)

15. The Motion is now ripe for resolution.

## II.

## LEGAL STANDARD

16. Under North Carolina Rule of Civil Procedure 26 ("Rule 26"), a liberal scope of discovery allows parties to obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[,]" even if the information sought will be inadmissible at trial or the examining party already has knowledge of the information sought. N.C. R. Civ. P. 26(b)(1). The relevancy test for discovery differs from the "stringent test" required for admissibility at trial. *Willis v. Duke Power Co.*, 291 N.C. 19, 34, 229 S.E.2d 191, 200 (1976). "To be relevant for purposes of discovery, the information sought need only be 'reasonably calculated' to

lead to the discovery of admissible evidence." *Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 314, 248 S.E.2d 103, 106 (1978); *see also* N.C. R. Civ. P. 26(b)(1); *Gay v. Peoples Bank*, 2014 NCBC LEXIS 46, at *5 (N.C. Super. Ct. Sept. 17, 2014) (citation omitted).

17.    When a motion to compel discovery is filed, "[t]he party resisting discovery bears the burden of showing why the motion to compel should not be granted[,]" *Transatlantic Healthcare, LLC v. Alpha Constr. of the Triad, Inc.*, 2017 NCBC LEXIS 21, at *37 (N.C. Super. Ct. Mar. 9, 2017) (citation omitted), and must make a "particularized showing" rather than rely upon "conclusory or generalized statements[,]" *Nat'l Fin. Partners Corp. v. Ray*, 2014 NCBC LEXIS 50, at *26 (N.C. Super. Ct. Oct. 13, 2014) (quoting *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 5:12-CV-282-F, 2014 U.S. Dist. LEXIS 110535, at *7 (E.D.N.C. Aug. 11, 2014)). Deciding whether to grant or deny a motion to compel discovery "is within the trial court's sound discretion and will not be reversed absent an abuse of discretion." *Sessions v. Sloane*, 248 N.C. App. 370, 381, 789 S.E.2d 844, 853–54 (2016) (citation omitted).

18.    The Court may also limit discovery on its own initiative if it finds that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.

N.C. R. Civ. P. 26(b)(1a).

19. Under Rule 26, "[o]ne party's need for information must be balanced against the likelihood of an undue burden imposed upon the other." *Willis*, 291 N.C. at 34, 229 S.E.2d at 200.

## III.

## LEGAL ANALYSIS

20. The parties cite to this Court's prior rulings in *Next Advisor Continued, Inc. v. LendingTree, Inc.*, 2016 NCBC LEXIS 72 (N.C. Super. Ct. Sept. 16, 2016), and *Bradshaw v. Maiden*, 2017 NCBC LEXIS 30 (N.C. Super. Ct. March 31, 2017), to support their positions on the Motion. Both *Next Advisor* and *Bradshaw* reference the "apex doctrine," a federal doctrine not formally adopted by North Carolina state courts, under which a trial court may, in its discretion, limit discovery sought from top corporate executives. *See Bradshaw*, 2017 NCBC LEXIS 30, at *6–10 (discussing doctrine); *Next Advisor*, 2016 NCBC LEXIS 72, at *6–10 (same).

21. Various federal courts have noted that the apex doctrine serves as an aid to "ensur[e] that the liberal rules of procedure for depositions are used only for their intended purpose and not as a litigation tactic to create undue leverage by harassing the opposition or inflating its discovery costs." *Bradshaw*, 2017 NCBC LEXIS 30, at *7–8 (quoting *Performance Sales & Mktg. LLC v. Lowe's Cos., Inc.*, No. 5:07-CV-00140-RLV-DLH, 2012 U.S. Dist. LEXIS 131394, at *16 (W.D.N.C. Sept. 14, 2012)). "In its stronger form, the doctrine holds that, before a plaintiff may depose a defendant corporation's high-ranking ("apex") officer, that plaintiff must show that '(1) the executive has unique or special knowledge of the facts at issue and (2) other

less burdensome avenues for obtaining the information sought have been exhausted.'" *Performance Sales & Mktg. LLC*, 2012 U.S. Dist. LEXIS 131394, at *16–17 (citation omitted).

22. In this case, as in *Next Advisor* and *Bradshaw*, the Court declines to adopt the federal apex doctrine, finding that Rule 26 resolves the current dispute concerning the depositions of Ms. Good and Mr. Jamil. As in those cases, however, the Court will consider federal decisions interpreting the apex doctrine in applying Rule 26's balancing factors. *See Bradshaw*, 2017 NCBC LEXIS 30, at *9; *Next Advisor*, 2016 NCBC LEXIS 72, at *6–10; *see also Turner v. Duke Univ.*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989) ("Decisions under the federal rules are . . . pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules.").

23. In *Next Advisor*, the Court found that the defendant's CEO had "unique, personal knowledge relevant to the issues in dispute" and allowed his deposition to proceed primarily because the CEO negotiated the failed corporate acquisition at issue in that case and his conduct and representations were directly relevant and material to the asserted claims. 2016 NCBC LEXIS 72, at *11–12. In contrast, in *Bradshaw*, the Court did not permit the deposition of the defendant's President and COO because that high-level executive had no involvement of any kind in the disputed matter other than to sign the contract at issue pursuant to company policy. 2017 NCBC LEXIS 30, at *2, 14–15. The level of involvement of Ms. Good and Mr. Jamil in the matters at issue in this litigation appears to fall somewhere in between

these two paradigmatic extremes of chief executive involvement in the underlying dispute.

24. Here, the evidence appears quite clear that coal plant closure and coal ash remediation are and have been highly significant issues facing Duke. The evidence presented shows that Duke's CEO, COO, senior management, and Board of Directors have devoted substantial time and attention to these issues over the years, and, in particular, over the past decade. At this stage of the proceedings, and based on the argument and evidence before the Court, it appears to the Court at this time that Duke's pre-Dan River Spill and post-Dan River Spill strategies, plans, and activities concerning coal plant closures and coal ash remediation, as well as any Duke involvement in the creation and passage of CAMA, are relevant to the Joining Defendants' defenses in this litigation. Duke appears to largely agree for purposes of discovery, advancing an objection on relevance grounds only as to Ms. Good's involvement in Duke's follow up in the wake of the Dan River Spill. (*See* Duke's Br. Opp'n to Joining Defs.' Mot. to Compel 6.)

25. Based on the Court's review of the briefing, argument, and evidence on the Motion, it appears that Ms. Good and Mr. Jamil have each had significant involvement in analyzing, directing, and/or implementing Duke's strategy and decision-making concerning coal plant closures and coal ash remediation both before and after the Dan River Spill. It is also clear that a number of lower-level Duke executives have had significant, and in many instances greater, involvement in these issues, and that many of these employees have been or will be deposed in this action.

In balancing burden versus benefit under Rule 26, however, courts have recognized that the testimony of higher-level executives may have greater probative value than that of lower-level employees concerning certain issues in certain circumstances and that on certain matters the lower-level employee's testimony is not an adequate substitute for the testimony of the higher-level executive. *See, e.g., Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140, 146 (D. Mass. 1987) ("[A]s the ultimate authority, [higher-level executives'] views . . . may be of far greater probative value on the issue of intent and motive than the views of the lower-level executives."). The Court concludes that such is the case here.

26. Here, the Joining Defendants seek testimony from Duke's two highest-ranking executives, each of whom was specifically involved in analyzing, directing, and/or implementing Duke's strategies and plans concerning issues of high corporate significance that are central to the Joining Defendants' defenses in the instant litigation. While Duke argues that certain lower-level executives have testified, and other lower-level executives will testify, to provide the same information sought from Ms. Good and Mr. Jamil, the Court is persuaded by the evidence of record that Duke's testifying lower-level executives have not rendered, and will not render, testimony from Ms. Good or Mr. Jamil unreasonably cumulative or duplicative on the Joining Defendants' identified topics of inquiry. Instead, based on its review of the evidence of record, the Court concludes that Ms. Good and Mr. Jamil possess specific, unique knowledge relevant to the Joining Defendants' defenses in this litigation that is not readily obtainable from any other less burdensome source.

27.  As such, the Court finds this case much more like *Next Advisor* than *Bradshaw* and concludes, in the exercise of its discretion, that the balancing required under Rule 26 of the Joining Defendants' need for the testimony sought against the acknowledged burden imposed on Duke militates in favor of permitting the depositions of Ms. Good and Mr. Jamil to proceed in these circumstances. *See Willis*, 291 N.C. at 34, 229 S.E.2d at 200 (balancing Rule 26 factors); *Bradshaw*, 2017 NCBC LEXIS 30, at *9 (same); *Next Advisor*, 2016 NCBC LEXIS 72, at *12–13 (same).

28.  Having reached this conclusion, however, the Court further concludes, in the exercise of its discretion, that certain restrictions should be imposed on the permitted depositions to reduce the burden on Ms. Good and Mr. Jamil as Duke's top corporate officers. *See, e.g.*, *Folwell v. Hernandez*, 210 F.R.D. 169, 173–75 (M.D.N.C. 2002) ("Even when an executive does have personal knowledge about the case, the court still may fashion a remedy which reduces the burden on the executive."). Specifically, the Court concludes, in the exercise of its discretion, that certain restrictions as to time, location, capacity, scope, and duration are appropriate in these circumstances.

29.  Accordingly, the Court, in the exercise of its discretion, hereby **ORDERS** as follows:

    a. As to time and location, and consistent with the Court's discussion with the parties at the Hearing, the depositions of Ms. Good and Mr. Jamil will each take place in Charlotte, North Carolina at Duke's counsel's offices on an agreed-upon date between December 16, 2019 and January

15, 2020, and Duke and the Joining Defendants shall work cooperatively to schedule each deposition at a convenient time for each witness.

b.  As to capacity, Ms. Good and Mr. Jamil will each be deposed for purposes of this Order in her or his individual capacity, not as a corporate representative under North Carolina Rule of Civil Procedure 30(b)(6).

c.  As to scope, the Joining Defendants may examine Ms. Good and Mr. Jamil only on those topics identified at pages 3–11 in the Joining Defendants' brief in support of the Motion, except that the Joining Defendants may not examine Ms. Good or Mr. Jamil concerning Duke's specific Dan River Spill-related costs or Duke's SEC reporting of coal ash matters, as the Court concludes that these issues, to the extent they are relevant, are more appropriately discussed by Duke's lower-level executives and employees.

d.  As to duration, based on the evidence presented, the forecasted areas of deposition inquiry, the information obtained in depositions taken to date and forecasted to be obtained in the remaining depositions to be taken prior to the close of discovery, the burden to Ms. Good and Mr. Jamil as Duke's top officers, and the failure of the Joining Defendants to articulate a persuasive reason at the Hearing why a full seven-hour deposition of either executive is necessary to obtain the information sought, the Court concludes that it is reasonable, appropriate, and

consistent with fairness and justice to limit each deposition to four (4) hours of on-the-record examination by the Joining Defendants.

e.  Nothing in this Order shall impair Duke's right to invoke attorney-client privilege, work-product immunity, or any other objection permitted under the North Carolina Rules of Civil Procedure, as appropriate, at either of the depositions permitted hereunder.

**SO ORDERED**, this the 6th day of December, 2019.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge