IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1054

 Filed: 6 August 2019

Cumberland County, No. 16 CVS 8374

DR. SANDRA T. CROSMUN, DR. MICHAEL HESS, LESLIE KEENAN, DR. JOHN
R. PARKER, III, JAMIE E. STEVENS and CHERYL J. THOMAS, Plaintiffs,

 v.

THE TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE, DR.
LARRY J. KEEN, DR. DAVID L. BRAND and CARL MITCHELL, Defendants.

 Appeal by Defendants from an order entered 15 June 2018 by Judge Mary Ann

Tally in Cumberland County Superior Court. Heard in the Court of Appeals 9 May

2019.

 Tin, Fulton, Walker & Owen, PLLC, by S. Luke Largess, and Rabon Law Firm,
 PLLC, by Charles H. Rabon, Jr., Gregory D. Whitaker, and David G. Guidry,
 for Plaintiffs-Appellees.

 Yates, McLamb & Weyher, LLP, by Sean T. Partrick and David M. Fothergill,
 for Defendants-Appellants.

 INMAN, Judge.

 Seeking justice often involves enduring tedium. Many attorneys and judges

unsurprisingly consider the discovery stage of civil litigation among the most prosaic

and pedestrian aspects of practice.1 A single page among millions of records,

 1 Appellate courts are generally inoculated from directly engaging in discovery by virtue of

their distance from pre-trial proceedings. Cf. Barnette v. Woody, 242 N.C. 424, 430, 88 S.E.2d 223,
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

however—even one dismissed as irrelevant by the withholding party—may be

considered a “smoking gun” to the party seeking its disclosure.

 Our discovery rules “facilitate the disclosure prior to trial of any unprivileged

information that is relevant and material to the lawsuit so as to permit the narrowing

and sharpening of the basic issues and facts that will require trial,” Am. Tel. & Tel.

Co. v. Griffin, 39 N.C. App. 721, 726, 251 S.E.2d 885, 888 (1979), and are designed to

encourage the “expeditious handling of factual information before trial so that critical

issues may be presented at trial unencumbered by unnecessary or specious issues

and so that evidence at trial may flow smoothly and objections and other

interruptions be minimized.” Willis v. Duke Power Co., 291 N.C. 19, 34, 229 S.E.2d

191, 200 (1976). These vital purposes are no less present when electronic discovery

(“eDiscovery”) is concerned; in many instances, their importance is heightened.2

 Electronically stored information, or ESI, “has become so pervasive that the

volume of ESI involved in most cases dwarfs the volume of any paper records. This

makes ESI the driving force behind the scope of preservation and discovery

227 (1955) (“[I]t would require a tedious and time-consuming voyage of discovery for us to ascertain
upon what the appellant is relying to show error, and our Rules and decisions do not require us to
make any such voyage.”).
 2 Also no less present in eDiscovery is the monotony of document review. See, e.g., Lola v.

Skadden, Arps, Slate, Meagher & Flom LLP, 620 Fed. App’x 37, 45 (2d Cir. 2015) (interpreting North
Carolina law and holding that a California attorney, unlicensed in North Carolina, was not engaged
in the practice of law in this State when he served as a contract attorney sorting electronic documents
into categories devised by trial counsel, as he “exercised no legal judgment whatsoever” and “provided
services that a machine could have provided”).

 -2-
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

requirements in many cases[.]” The Sedona Principles, Third Edition: Best Practices,

Recommendations & Principles for Addressing Electronic Document Production, 19

Sedona Conf. J. 1, 56 (2018) (hereinafter the “Sedona Principles”);3 see also Analog

Devices, Inc. v. Michalski, 2006 NCBC 14, 2006 WL 3287382, at *5 (N.C. Super. Ct.

Nov. 1, 2006) (“It is an inescapable fact that ninety-nine percent of all information

being generated today is created and stored electronically. That fact may be shocking

to judges who still find themselves buried in paper, but even our court systems are

moving, albeit reluctantly, into the age of technology.” (citation omitted)).4

 3 The Sedona Principles, first published in 2004, seek to “serve as best practice
recommendations and principles for addressing ESI issues in disputes—whether in federal or state
court, and whether during or before the commencement of litigation.” Sedona Principles at 29. They
were drafted and published by The Sedona Conference, “a 501(c)(3) research and educational institute
that exists to allow leading jurists, lawyers, experts, academics, and others at the cutting edge of issues
in the areas of antitrust law, complex litigation, and intellectual property rights, to come together in
conferences and mini-think tanks . . . to engage in true dialogue—not debate—in an effort to move the
law forward in a reasoned and just way.” Id. at 8. The Sedona Principles and other publications of
The Sedona Conference have been relied upon by federal and state courts nationwide, including North
Carolina’s trial courts. See, e.g., Country Vintner of North Carolina, LLC v. E. & J. Gallo Winery, Inc.,
718 F.3d 249 (4th Cir. 2013) (relying on a glossary of eDiscovery terms published by The Sedona
Conference); Race Tires America, Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158 (3d Cir. 2012) (citing
various publications of The Sedona Conference concerning eDiscovery); John B. v. Goetz, 531 F.3d 448,
460 (6th Cir. 2008) (relying in part on the Sedona Principles in setting aside a trial court’s orders
compelling forensic imaging of the defendants’ computer hard drives where the orders “fail[ed] to
account properly for the significant privacy and confidentiality concerns present”); In re Queen’s
University at Kingston, 820 F.3d 1287 (Fed. Cir. 2016) (citing a publication of The Sedona Conference
on ESI retention); In re State Farm Lloyds, 520 S.W.3d 595, 60 Tex. Sup. Ct. J. 1114 (2017) (utilizing
the Sedona Principles to resolve an eDiscovery issue governed by Texas law); Tumlin v. Tuggle
Duggins, P.A., 2018 NCBC 49, 2018 WL 2327022, at *10 (N.C. Super. Ct. May 22, 2018) (relying on
the Sedona Principles to determine whether sanctions for spoliation in eDiscovery were proper).
 4 Our Supreme Court, recognizing the continuous stream of cases involving ESI in the North

Carolina Business Court, has promulgated a series of Business Court rules expressly requiring counsel
to discuss ESI with their clients and conduct a conference with the opposing party to fashion an ESI
production protocol. N.C. R. Bus. Ct. 10.2-.8 (2019).

 -3-
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

 Despite the general disdain of courts for discovery disputes, in the words of

Dorothea Dix, “[a]ttention to any subject will in a short time render it attractive, be

it ever so disagreeable and tedious at first.” Dorothea L. Dix, Conversations on

Common Things; Or, Guide to Knowledge. With Questions. For the Use of Schools and

Families. 270 (4th ed. 1832). This appeal presents this Court with our first

opportunity to address the contours of eDiscovery within the context of North

Carolina common and statutory law regarding the attorney-client privilege and work-

product doctrine.

 Defendants appeal from an order compelling discovery that allows Plaintiffs’

discovery expert access to Fayetteville Technical Community College’s (“FTCC”)

entire computer system prior to any opportunity for Defendants to review and

withhold documents that contain privileged information or are otherwise immune

from discovery. Defendants argue that the order compelling discovery constitutes an

impermissible involuntary waiver of those privileges.5 Plaintiffs argue that the trial

court’s order, in conjunction with a stipulated protective order consented to by the

parties, adequately protects Defendants’ privileges such that no waiver will occur.

After careful review, we hold that the trial court abused its discretion by compelling

 5 We recognize that the work-product doctrine is “not a privilege, but a ‘qualified immunity.’ ”
Evans v. United Serv. Auto. Ass’n, 142 N.C. App. 18, 28, 541 S.E.2d 782, 788 (2001) (quoting Willis v.
Power Co., 291 N.C 19, 35, 229 S.E.2d 191, 201 (1976)). Because the issues raised in this appeal
require no analysis differentiating attorney-client privilege and work-product immunity, to avoid
confusion and for ease of reading, we use the word “privilege” broadly to encompass both traditional
privileges, such as attorney-client privilege, and the qualified work-product immunity.

 -4-
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

production through a protocol that provides Plaintiffs’ agent with direct access to

potentially privileged information and precludes reasonable efforts by Defendants to

avoid waiving any privilege. We therefore vacate the order and remand for further

proceedings not inconsistent with this opinion.

 I. FACTUAL AND PROCEDURAL HISTORY

 Plaintiffs, who are former employees of FTCC, filed suit against Defendants on

7 December 2016, alleging retaliatory dismissals from FTCC in violation of the North

Carolina Whistleblower Protection Act. See N.C. Gen. Stat. § 126-84 (2017). One

week later, Plaintiffs’ counsel mailed a letter to each Defendant concerning the

complaint and informing them of their obligation to preserve ESI in light of the

litigation. As the action advanced to discovery, Plaintiffs served two sets of

interrogatories and requests for production of documents on Defendants in April and

October of 2017. Defendants responded to both sets of discovery requests but objected

to certain requests based on attorney-client, attorney work-product, and state and

federal statutory privileges.

 In January 2018, Plaintiffs served Defendants with a third set of

interrogatories and requests for production; Plaintiffs also mailed Defendants’

counsel a letter asserting their discovery responses were incomplete and expressing

concern that Defendants had destroyed responsive ESI. In February 2018,

Defendants’ counsel responded by letter denying any spoliation, rejecting Plaintiffs’

 -5-
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

claim that certain responses were incomplete, and agreeing to produce newly

discovered additional responsive documents. Dissatisfied with Defendants’ response,

Plaintiffs’ counsel sent additional letters reiterating their discovery demands.

Plaintiffs followed their letters with a motion to compel requesting the trial court

“[o]rder that the parties identify a computer forensics entity or individual who, at

Defendants’ cost, will search the computer servers at FTCC to determine if

Defendants have deleted emails and files pertaining to these discovery requests.”

 Plaintiffs’ motion came on for hearing on 26 February 2018 before Superior

Court Judge Douglas B. Sasser. At that hearing, Judge Sasser issued an oral ruling

requiring a forensic computer examination of FTCC’s servers and tasked the parties

with submitting a proposed order.

 Judge Sasser’s oral ruling did little to quell the parties’ disagreement, and

instead shifted their focus from what should be produced to what should appear in

the proposed order. Defendants objected to Plaintiffs’ first proposed order on the

ground that general language permitting Plaintiffs to search FTCC’s “computer files”

for “deleted material” was over-broad, as it required a search of all of FTCC’s systems

for any and all documents without limitation. Plaintiffs refused to revise the

proposed order and reiterated their belief that a search of FTCC’s entire system was

both necessary and allowed by Judge Sasser’s ruling. Defendants then drafted their

own proposed order. Plaintiffs then revised their proposed order slightly and

 -6-
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

suggested Defendants draft a consent protective order to address concerns relating to

the production of student information. Defendants objected that Plaintiffs’ revised

order did not adequately protect privileged information or appropriately limit the

scope of discoverable materials. But Defendants agreed to draft a protective order

for consideration by the trial court and Plaintiffs.

 While the above discussions were ongoing, and roughly two weeks after the

hearing before Judge Sasser, Defendants provided Plaintiffs with a supplemental

document production. Defendants also informed Plaintiffs that they had yet to

complete a draft protective order, as the model protective orders they were working

from “only covered inadvertent disclosure of confidential material[,]” and “[i]t has

been much more difficult to address privilege issues under a forensic search

situation.” Plaintiffs replied that they would draft a proposed protective order

prohibiting the disclosure of information protected by the Family Educational Rights

and Privacy Act of 1974 (“FERPA”). Counsel for Defendants rejected that offer,

expressing concern about how to prevent disclosure of materials within the attorney-

client privilege or work-product immunity. As discussions surrounding the protective

order continued, Plaintiffs submitted the parties’ competing proposed orders on the

motion to compel to Judge Sasser.

 Judge Sasser entered Plaintiffs’ proposed order on the motion to compel on 16

April 2018 (the “Forensic Examination Order”). In it, Judge Sasser provided for “a

 -7-
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

forensic examination of [FTCC’s] computer files” by a “forensic examiner.” The order

also provided that “the parties shall work with the examiner to agree on key words

and other search parameters to use in conducting this forensic review, which will

cover the period from . . . July 2014 to the present[,]” and that “Plaintiff’s shall bear

the initial costs of the forensic review.” However, the Forensic Examination Order

did not address how a forensic examiner would be selected, whether the examiner

would be an independent third party, or how the forensic examination itself would be

conducted, and it left resolution of any confidentiality concerns to a future protective

order to be submitted by the parties at a later date.

 Plaintiffs retained Clark Walton (“Mr. Walton”), an expert in computer

forensics and a licensed North Carolina attorney, to draft a proposed forensic

examination protocol to effectuate the Forensic Examination Order. As part of that

process, Defendants permitted Mr. Walton to question members of FTCC’s

Information Technology department about the nature of the college’s computer

systems. Plaintiffs then submitted a proposed forensic examination protocol to

Defendants for their consideration on 21 May 2018.6 The proposed protocol, in

pertinent part, provided for the following:

 6 The protocol provided to and adopted by the trial court was not drafted solely by Mr. Walton;
rather, it appears from the hearing transcript that Mr. Walton provided certain model protocols for
use by Plaintiffs’ counsel, who then crafted the protocol with input from Mr. Walton.

 -8-
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

 (1) Mr. Walton would physically access, either at his offices or at FTCC, all
 FTCC devices on which responsive material might be found or from which
 responsive material may have been deleted;

 (2) From those devices, Mr. Walton would create searchable mirror images7
 and keep those images in his custody (the “Search Images”);

 (3) Mr. Walton would run search terms “and other search parameters” desired
 by Plaintiffs through the Search Images to identify responsive data (the
 “Keyword Search Hits”);

 (4) Mr. Walton would then remove non-user and other non-responsive system
 files from the Keyword Search Hits consistent with standard computer
 forensics practice;

 (5) Using six search terms identified by Plaintiffs in their proposed protocol,
 Mr. Walton would then screen out any potentially privileged documents from
 the Keyword Search Hits (the “Privilege Search Hits”);

 (6) Mr. Walton would immediately deliver those documents not flagged in the
 Privilege Search Hits to Plaintiffs for their review, while Defendants would
 review the Privilege Search Hits and create a privilege log for all items in the
 Privilege Search Hits that they believed to be privileged;

 (7) Finally, Defendants would provide Plaintiffs with the privilege log and any
 documents from the Privilege Search Hits that Defendants determined were
 not actually subject to a privilege.

Plaintiffs also submitted a proposed stipulated protective order to Defendants on 24

May 2018.

 By 4 June 2018, Defendants had not responded to the protocol or followed up

with Plaintiffs about the joint protective order. Plaintiffs filed a combined motion to

 7 In eDiscovery parlance, a “mirror image” is “[a] bit by bit copy of any storage media. Often
used to copy the configuration of one computer to anther [sic] computer or when creating a preservation
copy.” The Sedona Conference Glossary: E-Discovery & Digital Information Management (Fourth
Edition), 15 Sedona Conf. J. 340 (2014) (citation omitted).

 -9-
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

compel and motion for sanctions requesting that the trial court: (1) adopt the

proposed protocol; (2) enter the proposed protective order; (3) shift the costs of

discovery to Defendants; and (4) as a sanction for Defendants’ alleged violation of

prior court orders, award Plaintiffs their attorneys’ fees incurred in obtaining the

discovery.

 On the same day Plaintiffs filed the combined motion, Defendants faxed a

letter objecting to the protocol, noting that their “main concern still lies with the

improper protection of files that could be potentially privileged. . . . It is FTCC’s

position that none of the documents . . . may be viewed by anyone who is not part of

the FTCC privilege [group] prior to the files being reviewed and approved by FTCC.”

Defendants also attached a red-lined version of the protocol identifying various

provisions that they believed endangered their privileges.

 The parties appeared before the trial court for a hearing on Plaintiffs’ combined

motion on 11 June 2018. They presented a stipulated protective order (the “Protective

Order”) for entry by the trial court. The Protective Order covers personnel and any

other information “generally treated as confidential[,]” and, if designated confidential

upon production or within 21 days of discussion in deposition testimony, precludes

dissemination of that information to outside parties except as necessary to the

litigation. It also addresses, in limited respects, the production of privileged

information as follows:

 - 10 -
CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

 15. Review of the Confidential Information by those so
 authorized by this Order shall not waive the confidentiality
 of the documents or objections to production. Nothing
 contained in this Order and no action taken pursuant to it
 shall waive or prejudice the right of any party to contest
 the alleged relevancy, admissibility, or discoverability of
 the Confidential Information sought or provided in
 discovery.

 16. Nothing in the foregoing provisions of this Order shall
 be deemed to waive any privilege, or to preclude any party
 from seeking and obtaining, on an appropriate showing,
 such additional protection with respect to Confidential
 Information as that party may consider appropriate.

 ....

 17. In order to facilitate discovery, the inadvertent
 disclosure of documents or other information subject to
 confidentiality, a privilege, or other immunity from
 production shall be handled as follows:

 a. From time to time during the course of discovery, one or
 more of the parties may inadvertently disclose documents
 or other information subject to confidentiality, a privilege,
 or other immunity from production. Any such disclosure
 shall not be deemed a waiver of the confidential, privileged,
 or immune nature of that document or information, or of
 any related subject matter.

 b. To that end, if a producing party, through inadvertence,
 error or oversight, produces any document(s) or
 information that it believes is immune from discovery
 pursuant to any attorney-client privilege, attorney work
 product immunity or any other privilege or immunity, such
 production shall not be deemed a waiver, and the
 producing party may give written notice to the receiving
 party that the document(s) or information so produced is
 deemed privileged and that the return of the document(s)
 or information is requested. Upon receipt of such written

 - 11 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

 notice, the receiving party shall immediately undertake to
 gather the original and all such copies to the producing
 party, and shall promptly destroy any newly created
 derivative document such as a summary of or comment on
 the inadvertently produced information.

 Four days after the hearing and entry of the Protective Order, the trial court

entered its order on Plaintiffs’ combined motion (the “Protocol Order”). That order

adopted the protocol proposed by Plaintiffs without alteration, and provided for Mr.

Walton, as “Plaintiffs’ expert[,]” to conduct a three-week-long forensic examination of

the Search Images at his offices. The trial court denied Plaintiffs’ motion for

sanctions.

 Defendants filed their notice of appeal from the Protocol Order and a motion

to stay on 21 June 2018. On 3 July 2018, the trial court entered a consent order on

Defendants’ motion to stay, requiring the immediate imaging of certain discrete

computer systems but otherwise staying operation of the Protocol Order.8

 II. ANALYSIS

A. Appellate Jurisdiction

 8 On appeal, Plaintiffs argue that the specific systems listed in the order granting the stay are
the only systems subject to forensic examination under the Protocol Order. This does not appear to be
the case, however, as neither the Forensic Examination Order nor the Protocol Order contains any
such limit, and the stay does not modify the prior orders. The record reflects that Plaintiffs rejected
Defendants’ request to include such a limit in their proposed order submitted to Judge Sasser, which
was later entered as the Forensic Examination Order. Applying their plain language, we interpret
both the Forensic Examination and Protocol Orders as requiring a complete imaging of all of
Defendants’ systems.

 - 12 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

 Interlocutory orders, or those orders entered in the course of litigation that do

not resolve the case and leave open additional issues for resolution by the trial court,

are ordinarily not subject to immediate appeal. Sessions v. Sloane, 248 N.C. App.

370, 380, 789 S.E.2d 844, 853 (2016). Such orders are appealable, however, “when

the challenged order affects a substantial right of the appellant that would be lost

without immediate review.” Campbell v. Campbell, 237 N.C. App. 1, 3, 764 S.E.2d

630, 632 (2014) (citations and quotations omitted). That said, “[a]n order compelling

discovery is interlocutory in nature and is usually not immediately appealable

because such orders generally do not affect a substantial right.” Sessions, 248 N.C.

App. at 380, 789 S.E.2d at 853 (citing Sharpe v. Worland, 351 N.C. 159, 163, 522

S.E.2d 577, 579 (1999)).

 An interlocutory order compelling discovery affects a substantial right when “a

party asserts a statutory privilege which directly relates to the matter to be disclosed

under an interlocutory discovery order, and the assertion of such privilege is not

otherwise frivolous or insubstantial[.]” Sharpe, 351 N.C. at 166, 522 S.E.2d at 581.

This rule applies to attorney work-product immunity and common law attorney-client

privilege. See, e.g., K2 Asia Ventures v. Trota, 215 N.C. App. 443, 446, 717 S.E.2d 1,

4 (2011) (holding an interlocutory order requiring production over the producing

party’s objections on attorney-client privilege and work-product immunity grounds

affected a substantial right subject to immediate appeal).

 - 13 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

 Blanket assertions that production is not required due to a privilege or

immunity are insufficient to demonstrate the existence of a substantial right.

Sessions, 248 N.C. App. at 381, 789 S.E.2d at 853. But specific objection to a discrete

enumerated request for production or a document-by-document identification of

alleged privileged information may suffice. See, e.g., K2 Asia Ventures, 215 N.C. App.

at 446-48, 717 S.E.2d at 4-5 (holding that some appealing defendants demonstrated

a substantial right by asserting work-product immunity and attorney-client privilege

as to a specific request for production of documents in their discovery responses while

other appealing defendants failed to show a substantial right by simply prefacing

their discovery responses with a general objection on those grounds not particularized

to any specific request).

 Plaintiffs argue that Defendants have failed to demonstrate that enforcement

of the Protocol Order will affect a substantial right because Defendants have yet to

identify specific privileged documents that would be captured and produced under

the protocol. A document-by-document assertion of privilege, however, is not strictly

required. Although “objections made and established on a document-by-document

basis are sufficient to assert a privilege[,]” Sessions, 248 N.C. App. at 381, 789 S.E.2d

at 853 (citation and quotation marks omitted) (emphasis added), they are not the

exclusive means of demonstrating the loss of a substantial right and the appealable

nature of a discovery order. K2 Asia Ventures, 215 N.C. App. at 446, 717 S.E.2d at 4;

 - 14 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

see also Friday Investments, LLC v. Bally Total Fitness of the Mid-Atlantic, Inc., 247

N.C. App. 641, 788 S.E.2d 170 (2016) (holding that a discovery order affected a

substantial right and was immediately appealable under the circumstances even

though the appellants failed to assert particularized claims of attorney-client

privilege in their initial discovery responses), aff’d as modified on separate grounds,

370 N.C. 235, 805 S.E.2d 664 (2017). We base our determination on whether

Defendants have legitimately asserted the loss of a privilege or immunity absent

immediate appeal. See, e.g., Evans v. United States Auto. Ass’n, 142 N.C. App. 18, 24,

541 S.E.2d 782, 786 (holding an interlocutory discovery order was immediately

appealable after determining the appellants’ assertion of privilege was neither

frivolous nor insubstantial and that the privilege would be lost absent immediate

review).

 Defendants made their specific objections on privilege and immunity grounds

early and often. In their responses to Plaintiffs’ requests for production of documents,

Defendants particularized these objections to specific requests. When Plaintiffs first

identified deficiencies in Defendants’ document production, Defendants responded

that they would be “re-running all . . . discovery key word searches” but would require

“some time to review [any newly discovered documents] for potential privilege issues

before some documents will be produced.” Although we do not have a transcript of

the hearing before Judge Sasser, Defendants communicated to Plaintiffs during the

 - 15 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

proposed order drafting process that any forensic examination protocol and protective

order would need to protect privileged information, as they did not “think [Judge

Sasser] ordered disclosure of attorney/client or work product material.”

 After Plaintiffs filed their combined motion to compel and motion for sanctions,

Defendants filed a response objecting to the protocol because it “would require

wholesale production of all of FTCC’s attorney/client privileged information to the

Plaintiffs’ forensic agent.” (emphasis in original). Defendants likewise lodged that

objection in a letter to Plaintiffs requesting certain changes to the protocol as

proposed. Defendants also raised their privilege concerns directly with the trial court

at the hearing on Plaintiffs’ combined motion to compel and for sanctions. Plaintiffs

have never disputed that the forensic search and creation of the Search Images would

capture potentially privileged information; to the contrary, they have simply argued

that the protocol protects those privileged documents from production. Defendants’

particularized, continuous, and timely objections do not appear frivolous from this

record, especially when Plaintiffs do not deny the possibility that the forensic search

will capture privileged information.

 It also appears that Defendants’ privileges will be lost absent immediate

appeal. The Protocol Order requires the indiscriminate production of Defendants’

entire computer system via the Search Images to Plaintiffs’ expert, a process which,

as explained infra, immediately violates Defendants’ privilege interests. As a result,

 - 16 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

Defendants’ meritorious and substantial objections will be lost absent immediate

review, and the Protocol Order constitutes an interlocutory order affecting a

substantial right subject to immediate appeal. See Sharpe, 351 N.C. at 166, 522

S.E.2d at 581; K2 Asia Ventures, 215 N.C. App. at 446, 717 S.E.2d at 4; Sessions, 248

N.C. App. at 381, 789 S.E.2d at 853.

B. Standard of Review

 Discovery orders compelling production and applying the attorney-client

privilege and work-product immunity are subject to an abuse of discretion analysis.

Sessions, 248 N.C. App. at 381, 789 S.E.2d at 853-54. “Under an abuse of discretion

standard, this Court may only disturb a trial court’s ruling if it was manifestly

unsupported by reason or so arbitrary that it could not have been the result of a

reasoned decision.” Id. at 381, 789 S.E.2d at 854 (citation and internal quotation

marks omitted). “When discretionary rulings are made under a misapprehension of

the law, this may constitute an abuse of discretion.” Gailey v. Triangle Billiards &

Blues Club, Inc., 179 N.C. App. 848, 851, 635 S.E.2d 482, 484 (2006) (citations

omitted).

C. eDiscovery Orders and the Protection of Privilege

 We write on a relatively blank slate regarding privileges in the forensic

imaging and eDiscovery context. As our Business Court has observed, “North

Carolina case law addressing problems inherent in electronic discovery, including

 - 17 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

waiver arising from inadvertent disclosure of privileged information, is not yet well

developed.” Blythe v. Bell, 2012 NCBC 42, 2012 WL 3061862, at *8 (N.C. Super. Ct.

July 26, 2012).

 North Carolina authority regarding eDiscovery is bare bones, generally

providing that “discovery of [ESI] stands on equal footing with discovery of paper

documents.” N.C. R. Civ. P. 34, Comment to the 2011 Amendment (2017); see also

N.C. R. Civ. P. 26(b) (defining ESI and including it within the scope of discovery

subject to the same privileges as paper documents).

 No statute, procedural rule, or decision by this Court or the North Carolina

Supreme Court has delineated the parameters of eDiscovery protocols with respect

to the protection of documents and information privileged or otherwise immune from

discovery.

 Just as a producing party is responsible for collecting, reviewing, and

producing responsive paper documents, it is generally understood that “[r]esponding

parties are best situated to evaluate the procedures, methodologies, and technologies

appropriate for preserving and producing their own electronically stored

information.” Principle 6, Sedona Principles at 118. It behooves a responsive party’s

attorneys, then, to engage with opposing counsel and jointly develop a mutually

agreeable means of conducting eDiscovery when it is clear that litigation will involve

ESI. See, e.g., Comment 3.b., Sedona Principles at 76-78 (noting that cooperation and

 - 18 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

agreement on eDiscovery may reduce costs and expedite discovery for both parties

while avoiding “expensive motion practice, which may lead to undesirable court

orders”); N.C. R. Civ. P. 26(f) (providing a mechanism for discovery conferences to

address production of ESI); N.C. R. Bus. Ct. 10.2-.3 (requiring a discovery conference

that includes discussion of eDiscovery and detailing issues that should be addressed

via an ESI production protocol).

 Absent controlling authority directly on point, we consider decisions by courts

in other jurisdictions as well as the universally persuasive authority, common sense.

 Forensic imaging of a recalcitrant responding party’s computers is one method

of resolving a dispute over ESI. See, e.g., Feeassco, LLC v. Steel Network, Inc., ___

N.C. App. ___, ___, 826 S.E.2d 202, 209 (2019) (holding a trial court did not abuse its

discretion in ordering an onsite audit of the producing party’s electronic sales and

accounting systems for potentially responsive ESI by an independent auditor when

the producing party conceded it had failed to comply with discovery requests).

However, as has been recognized by various state and federal courts, “[a] Court must

be mindful of the potential intrusiveness of ordering forensic imaging.” Wynmoor

Community Council, Inc. v. QBE Ins. Co., 280 F.R.D. 681, 687 (S.D. Fla. 2012) (citing

Bennett v. Martin, 186 Ohio App.3d 412, 425, 928 N.E.2d 763 (10th District 2009));

see also In re Ford Motor Co., 345 F.3d 1315, 1317 (11th Cir. 2003) (vacating the

district court’s order to provide the requesting party unlimited, direct access to the

 - 19 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

responding party’s databases without any protocol for the search, including no search

terms, and finding that direct access is not permissible without a factual finding of

non-compliance with discovery rules); Exec. Air Taxi Corp. v. City of Bismarck, 518

F.3d 562, 569 (8th Cir. 2008) (holding that the district court did not abuse its

discretion in declining to order a forensic analysis of a computer because the

responding party had provided all relevant documents in hard copy and forensic

discovery could disclose privileged documents).9

 Forensic examinations of ESI may be warranted when there exists some

factual basis to conclude that the responding party has not met its duties in the

production of discoverable information. Feeassco, ___ N.C. App. at ___, 826 S.E.2d at

209; see also N.C. R. Civ. P. 34, Comment to the 2011 Amendment (“If a party that

receives produced information claims that it needs . . . access to the full database or

system that generated the information, the question of . . . direct access will turn on

whether the requesting party can show that there is some specific reason, beyond

general suspicion, to doubt the information and that the burden of providing direct

access is reasonable in light of the importance of the information and the

circumstances of the case.”); Wynmoor Community Council, 280 F.R.D at 687

(allowing forensic imaging to recover potentially responsive deleted documents when

 9 The Sedona Principles likewise caution that “[i]nspection of an opposing party’s computer
system under Rule 34 [of the Federal Rules of Civil Procedure] and state equivalents is the exception
and not the rule for discovery of ESI.” Comment 6.d., Sedona Principles at 128.

 - 20 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

the producing party was “either unwilling or unable to conduct a search of their

computer systems for documents responsive to . . . discovery requests”).

 Even when a forensic examination is proper and necessary, any protocol

ordered must take into account privileges from production that have not been waived

or otherwise lost. Broadly speaking, courts ordering forensic examinations should be

mindful of:

 a) revealing trade secrets;

 b) revealing other highly confidential or private
 information, such as personnel evaluations and payroll
 information, properly private to individual employees;

 c) revealing confidential attorney-client or work-product
 communications;

 d) unreasonably disrupting the ongoing business;

 e) endangering the stability of operating systems, software
 applications, and electronic files if certain procedures or
 software are used inappropriately; and

 f) placing a responding party’s computing systems at risk
 of a data security breach.

Comment 6.d., Sedona Principles at 128-29.10 As the Sixth Circuit has observed,

“even if acceptable as a means to preserve electronic evidence, compelled forensic

imaging is not appropriate in all cases, and courts must consider the significant

 10 These interests are certainly present in this case, as FTCC maintains significant amounts
of personal data concerning its students that are subject to FERPA requirements.

 - 21 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

interests implicated by forensic imaging before ordering such procedures.” John B.,

531 F.3d at 460 (citation omitted).

 To resolve these concerns, it is recommended that a trial court’s chosen forensic

examination protocol: “(1) be documented in an agreed-upon (and/or court-ordered)

protocol; (2) recognize the rights of non-parties, such as employees, patients, and

other entities; and (3) be narrowly restricted to protect confidential and personally

identifiable information and system integrity as well as to avoid giving . . . access to

information unrelated to the litigation.” Comment 6.d., Sedona Principles at 129. In

every decision cited favorably by Plaintiffs for ordering a forensic examination or

other eDiscovery protocol, the trial court also took pains to address at least some of

the above concerns. See Bank of Mongolia v. M & P Global Fin. Servs., Inc., 258

F.R.D. 514, 520-21 (S.D. Fla. 2009) (adopting a protocol that contained provisions

designed to protect the producing parties’ privileges, including an express holding

that production to a court-appointed third-party expert would not constitute waiver

and allowing the producing parties to conduct a prior privilege review of all

documents to be produced); Wynmoor Community Council, 280 F.R.D. at 687-88

(adopting the Bank of Mongolia protocol while acknowledging the “potential

intrusiveness of . . . compelling a forensic examination”); Adair v. EQT Prod. Co., Nos.

1:10CV00037, 1:10CV00041, 2012 WL 2526982, *4 (W.D. Va. June 29, 2012) (ordering

an eDiscovery protocol that did not include an opportunity for prior privilege review

 - 22 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

of produced documents solely because other protective and clawback orders entered

in the case “protect any inadvertently produced privileged documents from waiver

and any nonrelevant documents from use or disclosure outside this litigation”).11

 A court-ordered eDiscovery protocol, no matter how protective of a party’s

confidences, may result in the production of privileged information. See, e.g., Adair

2012 WL 2526982 at *4 (“To be sure, there is the potential for privileged or

nonrelevant documents to slip through the cracks and be turned over to the other

side.”). Federal district courts may turn to Rule 502(d) of the Federal Rules of

Evidence to resolve the issue, which expressly permits “[a] federal court [to] order

that the privilege or protection is not waived by disclosure connected with the

litigation pending before the court—in which event the disclosure is also not a waiver

in any other federal or state proceeding.” Fed. R. Evid. 502(d) (2019). North

Carolina’s Rules of Evidence and Rules of Civil Procedure contain no direct analog,

however; thus, litigants in our courts may wish to agree to protective orders to

address additional privilege concerns when a forensic examination has been ordered.

See N.C. R. P. C. 1.6(c) (2017) (“A lawyer shall make reasonable efforts to prevent the

 11 Adair did not allow the requesting party direct access to the responding party’s systems
through a forensic examination, and instead established a protocol by which the responding party
would conduct a review of its own ESI. If the district court in Adair had ordered a forensic review by
the requesting party without offering the producing party an opportunity to review any eventual
production for privilege, it would have been outside the norm, as “courts that have allowed [forensic
access] generally have required that . . . no information obtained through the inspection be produced
until the responding party has had a fair opportunity to review that information.” Comment 6.d.,
Sedona Principles at 129.

 - 23 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

inadvertent or unauthorized disclosure of, or unauthorized access to, information

relating to the representation of a client.”). A court ordering a forensic examination

should encourage parties to enter into a protective order before requiring a forensic

examination “to guard against any release of proprietary, confidential, or personally

identifiable ESI accessible to the adversary or its expert [in the course of the forensic

examination].” Comment 10.e., Sedona Principles at 152.

D. North Carolina Law on Privileges from Production

 Although the advent of eDiscovery has undeniably altered how discovery is

conducted by parties and overseen by courts, it has not thus far influenced North

Carolina law regarding privileges.12 Fundamentally, the attorney-client privilege

and work-product immunity doctrine attach to ESI in the same manner and to the

same extent they apply to paper documents or verbal communications. See, e.g., N.C.

R. Civ. P. 26(b)(5) (providing a mechanism for asserting privilege or work-product

immunity as to “information otherwise discoverable[,]” which includes ESI under the

Rule).

 Determining whether the common law attorney-client privilege attaches to

discoverable information—including ESI—depends on the following five criteria:

 12We acknowledge that this may change if and when cases concerning the involuntary
disclosure of privileged ESI make their way to our appellate courts. See, e.g., Blythe, 2012 WL
3061862, at *8-14 (discussing in detail inadvertent waiver of privilege in the eDiscovery context).
Because no inadvertent disclosure has yet occurred in this case, this particular question of inadvertent
waiver under North Carolina common law is not squarely before this Court, and we do not resolve it
here.

 - 24 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

 (1) the relation of attorney and client existed at the time
 the communication was made, (2) the communication was
 made in confidence, (3) the communication relates to a
 matter about which the attorney is being professionally
 consulted, (4) the communication was made in the course
 of giving or seeking legal advice for a proper purpose
 although litigation need not be contemplated and (5) the
 client has not waived the privilege.

In re Miller, 357 N.C. 316, 335, 584 S.E.2d 772, 786 (2003). “[T]he [attorney-client]

privilege belongs solely to the client.” Id. at 338-39, 584 S.E.2d at 788. Critically, it

is the client’s alone to waive, for “[i]t is not the privilege of the court or any third party.”

Id. at 338, 584 S.E.2d at 788 (citations and quotation marks omitted) (emphasis in

original). Compulsory, involuntary disclosure may be ordered only “[w]hen certain

extraordinary circumstances are present” and some applicable exception, such as the

crime-fraud exception, apply. Id. at 335, 584 S.E.2d at 786.

 Work-product immunity, which “protects materials prepared in anticipation of

litigation from discovery,” Sessions, 248 N.C. App. at 383, 789 S.E.2d at 855, is also

subject to a particularized test that asks:

 Whether, in light of the nature of the document and the
 factual situation in the particular case, the document can
 fairly be said to have been prepared or obtained because of
 the prospect of litigation. But the converse of this is that
 even though litigation is already in prospect, there is no
 work product immunity for documents prepared in the
 regular course of business rather than for purposes of the
 litigation.

 - 25 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

Cook v. Wake Cnty. Hosp. Sys., Inc., 125 N.C. App. 618, 624, 482 S.E.2d 546, 551

(1997) (emphasis omitted). This immunity, too, is waivable. See, e.g., State v. Hardy,

293 N.C. 105, 126, 235 S.E.2d 828, 841 (1977) (holding work-product immunity is

waived when a party seeks to introduce its counsel’s work-product into evidence).

Information covered by the doctrine may nonetheless be discovered if the requesting

party demonstrates a “substantial need of the materials” and “is unable without

undue hardship to obtain the substantial equivalent of the materials by other means.”

N.C. R. Civ. P. 26(b)(3).

 Both the work-product immunity and attorney-client privilege are subject to

statutory modification. See, e.g., N.C. Gen. Stat. §§ 132-1.1 and 132-1.9 (2017)

(altering the application and availability of attorney-client privilege and work-

product immunity in the public records context). But neither statute nor caselaw has

provided any parameters for eDiscovery protocols in these respects.

E. The Protocol Order

 This appeal does not, at its core, turn on the appropriateness of the Forensic

Examination Order. Defendants have not appealed that order, nor do they present

any argument that a forensic examination was inappropriate. As is the case with

many discovery disputes, we have little doubt that information pertinent to

Defendants’ conduct in discovery did not make its way into the printed record before

us; Judge Sasser, as a judge of the trial division tasked with overseeing the discovery,

 - 26 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

was well positioned to review the conduct of the parties before him—whether dilatory

or otherwise—and determine in his discretion that the purposes of discovery were

best served by entry of the Forensic Examination Order. Similarly, Judge Tally was

in the best position to determine that, although sanctions were not appropriate, a

court ordered protocol that weighed Plaintiffs’ discovery needs more heavily than

Defendants’ was warranted. Although we ultimately vacate the Protocol Order for

the reasons stated infra, this opinion should not be read on remand as questioning

the necessity of either the Forensic Examination Order or entry of a protocol order

favorable to Plaintiffs’ interests. See, e.g., Capital Resources, LLC v. Chelda, Inc., 223

N.C. App. 227, 234, 735 S.E.2d 203, 209 (2012) (“It is well-established that, because

the primary duty of a trial judge is to control the course of the trial so as to prevent

injustice to any party, the judge has broad discretion to control discovery.” (citations

and quotation marks omitted)).

 We identify error in two interrelated provisions of the Protocol Order. First, it

allows Plaintiffs’ expert, rather than an independent third party, the authority to

directly access and image the entirety of Defendants’ computer systems absent regard

for Defendants’ privilege. Second, it orders the delivery of responsive documents to

Plaintiffs without allowing Defendants an opportunity to review them for privilege.

In both instances, the protocol compels an involuntary waiver, i.e., a violation of

Defendants’ privileges. Because North Carolina law is clear, albeit only in the analog

 - 27 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

discovery context until now, that a court cannot compel a party to waive or violate its

own attorney-client privilege absent some prior acts constituting waiver or an

applicable exception, In re Miller, 357 N.C. at 333-35, 584 S.E.2d at 786-87, those two

provisions of the Protocol Order were entered under a misapprehension of the law

constituting an abuse of discretion. Because production of information subject to the

work-product immunity can only be compelled upon a showing of substantial need

and undue hardship, N.C. R. Civ. P. 26(b)(3), requiring the production of any work-

product documents to Mr. Walton and Plaintiffs without any such showing is

similarly improper.

 The Protocol Order, as recounted supra, describes Mr. Walton as “Plaintiffs’

expert[.]” Plaintiffs have acknowledged that Mr. Walton is their agent and not

Defendants’, and conceded at oral argument that appointment of a special master

would be “more neutral” than the present arrangement. Further, although Plaintiffs

were unsure whether an attorney-client relationship exists between themselves and

Mr. Walton, retaining an attorney as an eDiscovery expert provides the opportunity

for creation of an attorney-client relationship. See, e.g., Jay E. Grenig et al.,

Electronic Discovery & Records & Information Management Guide: Rules, Checklists,

and Forms § 8:3 (2018-2019 ed.) (“Perhaps one of the key and often overlooked

benefits of e-discovery counsel is the protection of the attorney-client and work-

product privileges, as well as the e-discovery counsel’s ability to offer legal advice.

 - 28 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

Vendors who sell e-discovery products often offer consulting services with the

products, but are prohibited from offering legal advice. While the advice of

consultants may not be protected, legal advice from e-discovery counsel will have the

protection of privilege.”).13

 The Protocol Order tasks Mr. Walton with creating the Search Images, which

contain all of FTCC’s data, by mirror imaging FTCC’s systems. The order provides

for him to take those Search Images to his own office and conduct a forensic

examination of those images pursuant to the protocol over the course of three weeks.

A comparable protocol for a paper production would allow Plaintiffs’ expert to

photocopy all of Defendants’ documents (including those in their in-house counsel’s

file cabinets), take those copies off-site, and then review those files for responsive

documents, both privileged and non-privileged, without Defendants having had an

opportunity to conduct their own review of those copies first. Such a process would

violate Defendants’ attorney-client privilege as a disclosure to the opposing party.

See, e.g., Industrotech Constructors, Inc. v. Duke University, 67 N.C. App. 741, 743,

314 S.E.2d 272, 274 (1984) (“It is well established in this state that even absolutely

 13 eDiscovery Attorneys are subject to fiduciary and ethical professional standards provided by
our common law and the North Carolina Rules of Professional Conduct, including those that require
the eDiscovery attorney to place his clients’ interests over his own and those of the opposing party.

 - 29 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

privileged matter may be inquired into where the privilege has been waived by

disclosure”). The digital equivalent does so as well.14

 Plaintiffs contend that the Protocol Order’s provision for a privilege screen

prior to any production from Mr. Walton to Plaintiffs adequately protects Defendants’

privilege. We disagree.

 The Protocol Order requires Mr. Walton to use search terms to scan the Search

Images for any potentially responsive files—the Keyword Search Hits—and then

tasks him with searching the Keyword Search Hits with different search terms to

identify and segregate potentially privileged files—the Privilege Search Hits. The

Protocol Order allows Defendants to review the Privilege Search Hits for privileged

documents to withhold under a privilege log, while Mr. Walton would turn over any

Keyword Search Hits not identified as Privilege Search Hits directly to Plaintiffs.

Plaintiffs argue that because Mr. Walton is prohibited from sharing the Privilege

Search Hits with Plaintiffs and Defendants will have an opportunity to review the

Privilege Search Hits prior to production, Defendants’ privilege will not be violated.

 We are unconvinced. While the use of search terms assists in preventing

disclosure of privileged materials, it is far from a panacea. “[A]ll keyword searches

are not created equal; and there is a growing body of literature that highlights the

 14 Nothing in this opinion should be read to call into question the competency or integrity of
Mr. Walton. Our holding would not change no matter who the Plaintiffs had selected to serve as their
expert, as the error present in the Protocol Order is a legal one, independent of the individuals tasked
with carrying the order out.

 - 30 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

risks associated with conducting an unreliable or inadequate keyword search or

relying exclusively on such searches for privilege review.” Victor Stanley, Inc. v.

Creative Pipe, Inc., 250 F.R.D. 251, 256-57 (D. Md. May 29, 2008). Selecting the

appropriate keywords and search parameters requires special care, as “there are well-

known limitations and risks associated with [keyword searches], and proper selection

and implementation obviously involves technical, if not scientific knowledge.” Id. at

260 (citations omitted). To determine whether or not selected search terms are

adequate to screen for privilege, parties should “test and re-test samples to verify that

the search terms used . . . ha[ve] a reasonably acceptable degree of probability of

identifying privileged or protected information[,]” Comment 10.g., Sedona Principles

at 157, and should “perform some appropriate sampling of the documents determined

to be privileged and those determined not to be in order to arrive at a comfort level

that the categories are neither over-inclusive nor under-inclusive.” Victor Stanley,

Inc., 250 F.R.D. at 257.

 With one exception, the decisions cited by Plaintiffs in support of the Protocol

Order allowed for the producing party to engage in this kind of quality control before

any responsive documents identified in the forensic examinations were produced. See

Bank of Mongolia, 258 F.R.D. at 521 (allowing the producing party to review the

responsive documents identified by keyword search for privilege prior to production

 - 31 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

to the requesting party); Wynmoor Community Council, 280 F.R.D at 688 (providing

for the same).

 The singular case identified by Plaintiffs in which no prior review was allowed,

Adair, is immediately distinguishable because it did not involve a compulsory forensic

examination by the requesting party or its agent. Adair instead involved an order

compelling the responding party to produce certain documents through a protocol

imposed on it by the trial court. Adair, 2012 WL 2526982 at *2-3. Also, the parties

in Adair had entered into both a clawback order and a protective order to avoid

waiver. The clawback order provided that “[t]he producing party is specifically

authorized to produce Protected Documents without a prior privilege review, and the

producing party shall not be deemed to have waived any privilege or production in

not undertaking such a review.” Id. at *1. The protective order prohibited use of the

documents in any other action and designated all documents produced under the

court’s order as confidential. Id. at *4, n.6. In ordering a production without prior

privilege review, the district court wrote that “this approach would not be appropriate

without the existence of the Protective Order and Clawback Order.” Id. at *4.

 Although the parties in this case did enter into the Protective Order, unlike

the protective order in Adair, it does not apply to all documents produced pursuant

to the Protocol Order. Instead, it contemplates the parties having an opportunity to

designate a document as “confidential” at the time of production—an opportunity that

 - 32 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

is denied to Defendants under the automatic production of the Keyword Search Hits

by Mr. Walton to Plaintiffs pursuant to the Protocol Order. And, although the

Protective Order allows for a clawback of privileged documents, it does not contain

the language, relied on by the court in Adair, providing that production of documents

without prior privilege review would not constitute a waiver. Instead, the clawback

here applies only to privileged documents produced “through inadvertence, error or

oversight,” and it is not immediately clear whether production of any privileged

information not captured in the Privilege Search Hits and delivered to Plaintiffs as

part of the Keyword Search Hits would fall within that language.15 Assuming

arguendo that such a production would be inadvertent and subject to the clawback

provision’s language, the Protocol Order nevertheless compels Defendants to violate

their privilege as to any documents given to Mr. Walton and Plaintiffs that are not

 15 The parties disagree on this question, though neither cites any caselaw as to whether a court
compelled disclosure constitutes an inadvertent disclosure, either for purposes of the Protective Order
or similar clawback language found in N.C. R. Civ. P. 26(b)(5)b. Various federal courts had, prior to
enactment of Rule 502 of the Federal Rules of Evidence, held that a court compelled disclosure is an
inadvertent production subject to clawback by interpreting and applying Rule 501 of the Federal Rules
of Evidence and a proposed rule of evidence that Congress ultimately declined to adopt. See, e.g.,
Hopson v. Mayor and City Council of Baltimore, 232 F.R.D. 228, 246 (D. Md. 2005) (holding that the
federal common law rule of privilege applicable through Rule 501 permitted consideration of the
proposed, but never enacted, federal rule concerning court compelled production and concluding such
a production would not waive privilege). With the advent of Rule 502, federal courts need not grapple
directly with the question any longer, and can simply state in their orders that any disclosure pursuant
thereto does not constitute a waiver. Fed. R. Evid. 502(d). North Carolina, however, expressly declined
to adopt either Rule 501 as adopted by Congress or the proposed rules Congress rejected, see Official
Commentary, N.C. R. Evid. 501 (2017), and our legislature has not yet enacted an equivalent to
Federal Rule 502(d). Thus, federal caselaw is of questionable assistance. In any event, the question
has not been squarely presented here, as no inadvertent disclosure has yet occurred and it is unclear
whether the issue will arise between the parties. We therefore decline to reach that question on the
merits.

 - 33 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

contained within the Privilege Search Hits, leaving Defendants with, at best, an

imperfect clawback remedy to rectify the compulsory violation. See, e.g., Blythe, 2012

WL 3061862, at *10 (“Protections to guard against privilege cannot be deferred by

first addressing the risk of waiver only after a production has been made.”); Parkway

Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, 116 F.R.D. 46, 52

(M.D. N.C. 1987) (“[W]hen disclosure is complete, a court order cannot restore

confidentiality and, at best, can only attempt to restrain further erosion.”). Under

the circumstances presented here, the Protective Order is inadequate to protect

Defendants’ privilege, and it does not avoid the compulsory violation of that privilege

under the Protocol Order. Cf. In re Dow Corning Co., 261 F.3d 280, 284 (2d Cir. 2001)

(“[C]ompelled disclosure of privileged attorney-client communications, absent waiver

or an applicable exception, is contrary to well established precedent. . . . [W]e have

found no authority . . . that holds that imposition of a protective order . . . permits a

court to order disclosure of privileged attorney-client communications. The absence

of authority no doubt stems from the common sense observation that such a protective

order is an inadequate surrogate for the privilege.”).

 In short, the Protocol Order provides Plaintiffs’ agent direct access to

privileged information, which disclosure immediately violates Defendants’ privileges.

It furthers that violation by directing that agent, having attempted to screen some

privileged documents out through the use of search terms, to produce potentially

 - 34 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

responsive documents without providing Defendants an opportunity to examine them

for privilege. If, following that continued violation, Plaintiffs—their agent

notwithstanding—receive privileged documents, Defendants must attempt to

clawback that information, reducing their privilege to a post-disclosure attempt at

unringing the eDiscovery bell. Such compelled disclosure of privileged information is

contrary to our law concerning both attorney-client privilege and work-product

immunity. Cf. In re Miller, 357 N.C. at 333-35, 584 S.E.2d at 786-87; N.C. R. Civ. P.

26(b)(3). As a result, we hold the trial court misapprehended the law concerning

attorney-client privilege and the work-product immunity (however understandably

given its undeveloped state within the eDiscovery arena), vacate the Protocol Order,

and remand for further proceedings.

F. Disposition on Remand

 Because we recognize the complexity of privilege in the eDiscovery context, and

given the extensive investment of time and resources by the parties and the trial

court to date, we identify several nonexclusive ways in which the trial court could

resolve the discovery dispute in light of this decision.

 First, the trial court may wish to employ a special master or court-appointed

independent expert—such as Mr. Walton, provided his agency relationship to

 - 35 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

Plaintiffs is severed—to perform the forensic examination as an officer of the court 16

consistent with the cases cited by Plaintiffs on appeal. Bank of Mongolia, 258 F.R.D.

at 521; Wynmoor Community Council, 280 F.R.D at 688. Such an appointment

appears to be the commonly accepted approach in other jurisdictions and is consistent

with the recommendations of the leading treatises on eDiscovery. See, e.g., Comment

10.e., Sedona Principles at 152-53 (noting that forensic examination orders “usually

should provide that either a special master or a neutral forensic examiner undertake

the inspection”). And, by restricting the expert’s relationship to that of an

independent agent of the trial court, Defendants can safely disclose any and all

privileged information to him without endangering confidentiality. Cf. In re Miller,

357 N.C. at 337, 584 S.E.2d at 787 (noting that privileged information disclosed to

the trial court for in camera review “retains its confidential nature”).

 Second, the trial court may wish to provide Defendants with some opportunity,

however expedited given the position of the case, to review the Keyword Search Hits

prior to production to Plaintiffs. Such an approach is, again, consistent with both the

cases dealing with forensic examinations cited by Plaintiffs on appeal and pertinent

commentaries on eDiscovery. Bank of Mongolia, 258 F.R.D. at 521; Wynmoor

Community Council, 280 F.R.D at 688. See, e.g., Comment 6.d., Sedona Principles at

 16 Mr. Walton, as a licensed attorney, is already an officer of the court. That status, however,
does not inherently deprive him of his agency relationship with Plaintiffs or resolve the privilege issue.
Plaintiffs’ attorneys, too, are officers of the court, but disclosure of Defendants’ privileged information
to them may nonetheless serve as a waiver of attorney-client privilege and work-product immunity.

 - 36 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

129 (“[C]ourts that have allowed access [for forensic examinations] generally have

required . . . that no information obtained through the inspection be produced until

the responding party has had a fair opportunity to review that information.”). In

addition, the trial court may wish to order that any documents produced under the

protocol adopted are confidential within the meaning of the Protective Order and that

any disclosure of privileged information under the protocol is subject to clawback

without waiver of any privilege or work-product immunity.17

 Provisions such as those outlined here have been recognized by courts in other

jurisdictions as sufficient to prevent any compulsory violation of Defendants’

privilege. See, e.g., Playboy Enterprises, Inc. v. Welles, 60 F. Supp. 2d 1050, 1054

(S.D. Cal. 1999) (holding that because the forensic examination would be performed

by an independent third party and the producing party would have the opportunity

 17 It may be that this modification alone could, in certain circumstances, be sufficient to protect
the producing party’s privilege. We do not resolve the question here, but note that North Carolina’s
legislature has not seen fit to adopt analogs to Rules 501 and 502 of the Federal Rules of Evidence that
have assisted in addressing the court compelled disclosure of privileged information in the federal
courts. Furthermore, we observe that such agreements appear to be generally disfavored as the
exclusive means of protecting privilege in most contexts. See Comment 10.e., Sedona Principles at
153-56 (reviewing the drawbacks of clawback or “quick peek” agreements and concluding “[i]t is
inadvisable for a fully-informed party to enter a ‘quick peek’ agreement unless either the risks of
disclosure of privileged and work-product protected information, as well as commercial and personally
sensitive information, are non-existent or minimal, or the discovery deadline cannot otherwise be
met . . . and alternative methods to protect against disclosure are not available”). Such agreements,
then, are best considered as an additional protective measure rather than the primary prophylactic.
Compare N.C. R. Bus. Ct. 10.3(c)(3) (requiring counsel to discuss as part of an ESI protocol methods
for designating documents as confidential) and N.C. R. Bus. Ct. 10.5(b) (encouraging parties to agree
on implementation of privilege logs to protect privileged information), with N.C. R. Bus. Ct. 10.6 (“The
Court encourages the parties to agree on an order that provides for the non-waiver of the attorney-
client privilege or work-product protection in the event that privileged or work-product material is
inadvertently produced.”).

 - 37 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

to review for privilege prior to any production, their “privacy and attorney-client

communications will be sufficiently protected”); Genworth Financial Wealth Mgmt.,

Inc. v. McMullan, 267 F.R.D. 443, 449 (D. Conn. 2010) (ordering a forensic

examination by a neutral, court-appointed expert and allowing the producing party

an opportunity to review for privilege prior to production). We cite these cases as

examples rather than offering them as the as the exclusive means of resolving the

parties’ dispute. The trial court is in the best position to fashion any other or

additional provisions not inconsistent with this opinion. All that is required on

remand is that the protocol adopted not deprive the Defendants of an opportunity to

review responsive documents and assert any applicable privilege, whether that be

through the use of the inexhaustive suggestions enumerated above or some other

scheme of the trial court’s own devise.18 Cf. Playboy Enterprises, 60 F. Supp. 2d at

1053-54 (noting that discovery of ESI through a forensic examination is permissible

but that “[t]he only restriction in this discovery is that the producing party be

protected against undue burden and expense and/or invasion of privileged matter”).

 III. CONCLUSION

 18 Of course, the trial court may also, in its discretion, wish to address other aspects of the
protocol not discussed herein, such as the shifting of costs, the manner in which search terms are
selected, additional protections for information covered by FERPA, the timeline of production, or the
limitation of the search to certain computers, servers, or hard drives. We stress, however, that the
trial court need not reinvent the wheel, and the only issue that must be addressed on remand is the
avoidance of compulsory waiver and the violation of Defendants’ privilege as described herein.

 - 38 -
 CROSMUN V. TRUSTEES OF FAYETTEVILLE TECHNICAL COMMUNITY COLLEGE

 Opinion of the Court

 For the foregoing reasons, we vacate the Protocol Order for an abuse of

discretion and remand for further proceedings not inconsistent with this opinion.

 VACATED AND REMANDED.

 Judges STROUD and ZACHARY concur.

 - 39 -